**R.J. SUAREZ ENTERPRISES INC., Appellant**

v.

**PNYX L.P., GAMR Ltd., Michael Mantas, an Individual, and Sam Kim, Individually and d/b/a Super Sub and Smoothie+, Appellees.**

**No. 05–11–00934–CV.**

Court of Appeals of Texas, Dallas.

Aug. 29, 2012.

Jennifer S. Stoddard and Christopher B. Welsh, Stoddard & Welsh, PLLC, Dallas, TX, for Appellant.

Anthrea Nikolopoulos, The Ashmore Law Firm, PC, Chad M. Ruback, THe Ruback Law Firm, Dallas, TX, for Appellee.

Before Justices BRIDGES, FRANCIS, and LANG.

## OPINION

Opinion By Justice LANG.

R.J. Suarez Enterprises Inc. (Suarez Enterprises) appeals the portion of the trial court's final judgment finding in its favor on its claim for conversion, but ordering that it take-nothing in its suit against PNYX L.P., GAMR Ltd., Michael Mantas, an individual, and Sam Kim, individually and d/b/a Super Sub and Smoothie+. In a cross-appeal, PNYX, GAMR,

and Mantas appeal the portion of the trial court's final judgment finding against them on their counterclaim for breach of the lease and ordering that they take nothing. Sam Kim did not file a brief in this appeal.

Suarez Enterprises raises four issues on appeal. We construe the issues to argue the trial court erred when it: Issue (1),(a) concluded replacement cost is not a proper measure of damages for conversion, rather it is the fair market value, and (b) concluded Suarez Enterprises failed to produce any evidence of fair market value; Issue (2)(a) concluded the return of the property plus damages for loss of use is not a proper measure of damages for conversion, (b) concluded Suarez Enterprises was not entitled to the return of the property plus damages for loss of use, and (c) found Suarez Enterprises judicially admitted it did not seek the return of the converted property; Issue (3) found the disputed property had some market value and Suarez Enterprises did not present evidence of the fair market value, only replacement cost; and Issue (4) denied Suarez Enterprises' request for attorney's fees and expenses because the conversion finding was based on and related to a contract. In a cross-issue, PNYX, GAMR, and Mantas argue the trial court erred when it rendered a judgment against them on their claim for breach of the lease because there was insufficient evidence to support the trial court's findings of fact that Suarez Enterprises did not breach the lease.

We conclude the trial court did not err, as a matter of law, when it concluded that the proper measure of damages for conversion is the fair market value. Also, we conclude the evidence was sufficient to support the trial court's findings of fact that the converted property had some market value and Suarez Enterprises did not present evidence of the fair market value, only replacement cost. In addition, we conclude the trial court did not err when it concluded Suarez Enterprises failed to produce any evidence of the fair market value of the converted property. Further, we conclude the trial court did not err when it denied Suarez Enterprises' request for attorney's fees. Finally, we conclude there was sufficient evidence to support the trial court's findings of fact that Suarez Enterprises did not breach the lease. The trial court's final judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Suarez Enterprises owned and operated a sandwich shop, leasing the premises where the shop was located. The real property where the leased premises was located was subsequently sold to GAMR, of which Mantas is the principal. Then, GAMR "transferred" the building to PNYX, the current owner of the property. Mantas is also the property manager for PNYX.

Suarez Enterprises notified PNYX that it did not intend to renew its lease. As a result, PNYX identified a new tenant, Sam Kim and Wha Kim d/b/a Super Sub and Smoothie+, who planned to open a sandwich shop on the premises.

Before the lease expired, Suarez Enterprises and PNYX disagreed over the ownership of a walk-in cooler, walk-in freezer, sandwich unit, beverage cooler, and ice machine. Each believed that under the terms of the lease it owned the disputed property. The lease expired on May 31, 2010, but PNYX agreed to a holdover tenancy for a few days in June. However, on June 5, 2010, PNYX, GAMR and Mantas took control of the disputed property. On June 7, 2010, Sam Kim took control of the walk-in cooler, walk-in freezer, and four-piece sandwich unit.

Suarez Enterprises filed suit against PYNX, GAMR, Mantas, and Sam Kim alleging claims for conversion, violations of the Theft Liability Act, interference, defamation, and business disparagement.[1] It also requested attorney's fees. All of the defendants filed answers generally denying the claims. In addition, PNYX, GAMR, and Mantas asserted affirmative defenses and counterclaims for breach of the lease, trespass, and tortious interference.

The case was tried by the court. The trial court found in favor of Suarez Enterprises on its claim for conversion, but ordered that it take nothing on its claim because it failed to present evidence of the fair market value of the property. The trial court found against Suarez Enterprises on its remaining claims and denied its request for attorney's fees. Also, the trial court found against PNYX, GAMR, and Mantas on their counterclaims and ordered that they take nothing.

Suarez Enterprises raises issues that contain several subparts. For clarity, we do not address those issues and subparts in the order they were presented, but group and address similar arguments together.

## II. THE APPROPRIATE MEASURE OF DAMAGES FOR CONVERSION

In issue one, subpart (a), and issue two, subpart (a), Suarez Enterprises argues the trial court erred when it concluded, as a matter of law, the replacement cost and the return of the property plus damages for loss of use are not proper measures of damages for conversion. They claim the trial court incorrectly concluded that the fair market value is the only proper measure of damages for conversion. Suarez

Enterprises' issue one, subpart (a), and issue two, subpart (a), challenge the trial court's conclusion of law that "[t]he proper measure of damages of the disputed property is its market value at the time of the conversion."

### A. Standard of Review

An appellate court conducts a de novo review of a trial court's legal conclusions. *Bundren v. Holly Oaks Townhomes Ass'n Inc.*, 347 S.W.3d 421, 430 (Tex.App.-Dallas 2011, pet. denied); *see also BMC Software Belgium N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002) (discussing special appearance).

### B. Applicable Law

A plaintiff who establishes conversion is entitled to either (1) the return of the property and damages for its loss of use during the time of its detention, or (2) the value of the property. *See Wiese v. Pro Am Svcs. Inc.*, 317 S.W.3d 857, 862 (Tex.App.-Houston [14th Dist.] 2010, no pet.); *Varel Mfg. Co. v. Acetylene Oxygen Co.*, 990 S.W.2d 486, 497 (Tex.App.-Corpus Christi 1999, no pet.). However, the plaintiff may not generally recover in conversion both for the market value of the property and for loss of use. *Varel*, 990 S.W.2d at 497. Generally, the measure of damages for conversion is the fair market value of the property at the time and place of the conversion. *United Mobile Networks L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex.1997). Even when there is evidence supporting a finding of conversion, there must be evidence of the fair market value of the converted property to support a damages award. *See Ayala v. Valderas*, No. 02–07–00134–CV, 2008 WL 4661846 (Tex.App.-Fort Worth 2008, no pet.) (mem.

---

1. Wha Kim, individually and d/b/a Super Sub and Smoothie+, was also named as a defendant. However, Wha Kim was never served with process.

op.) [2] (evidence factually insufficient to support damages award because award not based on fair market value of property at time of conversion); *Bishop v. Geno Designs Inc.*, 631 S.W.2d 581, 584 (Tex.App.-Tyler 1982, no writ) (evidence insufficient to support damages award because no evidence of fair market value of property converted); *Engineered Plastics Inc. v. Woolbright*, 533 S.W.2d 906, 908 (Tex. App.-Tyler 1976, no writ) (evidence insufficient to support finding of market value because plaintiff offered evidence of replacement value and made no attempt to prove market value); *see also Hughes Blanton, Inc. v. Shannon*, 581 S.W.2d 538, 540 (Tex.Civ.App.-Dallas 1979, no writ) (replacement value less forty percent discount was not competent evidence to establish fair market value of converted tools).

▬▬ The plaintiff must elect to recover the property itself or the fair market value in damages. *See Horlock v. Horlock*, 614 S.W.2d 478, 484 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.). The plaintiff may not change its election of damages for conversion after the case has been submitted to the fact-finder. *Horlock*, 614 S.W.2d at 484. Further, this election is subservient to the doctrine that the object is to compensate for the injury and the trial court must be given the discretion required to fashion an equitable remedy. *See Storms v. Reid*, 691 S.W.2d 73, 75 (Tex.App.-Dallas 1985, no writ). If allowing the plaintiff to elect to recover the converted property itself will over-compensate him for his injury, then the trial court should take the election away from the plaintiff and limit the recovery to the fair market value of the property at the time and place of the conversion. *See Storms*, 691 S.W.2d at 75.

### B. Application of the Law to the Facts

With regard to its claim that the trial court erred, as a matter of law, when it concluded the replacement cost was not a proper measure of damages for conversion, Suarez Enterprises relies on *International–Great Northern Railroad Company v. Casey* to support its argument that the proper measure of damages in this case is the replacement cost. *Int'l–Great N. R.R. Co. v. Casey*, 46 S.W.2d 669 (Tex. Comm'n App.1932, holding approved). However, *Casey* involved a negligence action seeking damages for the destruction of a pair of mules, wagon, and harness during a collision at a public railroad crossing. *Casey*, 46 S.W.2d at 670. The Commission of Appeals of Texas concluded the trial court erred when it refused, over objection, to submit a jury charge that gave an accurate measure of damages and required the jury to find the market value of the destroyed property. *Casey*, 46 S.W.2d at 671. Suarez Enterprises relies on the following language from the Commission of Appeals:

> If the action is based upon the loss of the property, the general standard fixed for the measure of damages is the value of the property destroyed or damaged. The rule is settled that where property is destroyed or injured, which has a market value, this must be shown by the owner as the measure of damages; where it has neither market value nor a real value, but it is shown what it would cost to replace or reproduce the article, then such cost is the measure of recovery.

*Casey*, 46 S.W.2d at 670.

▬▬ The Commission of Appeals's opinion in *Casey* is distinguishable from the

---

**2.** "All opinions and memorandum opinions in civil cases issued after [January 1, 2003] have

precedential value." Tex.R.App. P. 47.2 cmt., 47.7 cmt.

facts of this case. *Casey* is a negligence case involving property that was "destroyed or damaged." The case before us is a conversion case and the property of Suarez Enterprises was not destroyed or damaged. Accordingly, we conclude that in this case, on this record, the replacement cost is not a proper measure of damages. *United Mobile Networks,* 939 S.W.2d at 147–48; *Varel,* 990 S.W.2d at 497. Issue one, subpart (a), is decided against Suarez Enterprise.

■ With regard to its claim that the trial court erred, as a matter of law, when it concluded the return of the property plus damages for loss of use was not a proper measure of damages, Suarez Enterprises contends it specifically pleaded for the return of the property and presented uncontroverted evidence at trial of its lost profits. However, the record shows that before the trial began, Suarez Enterprises elected to receive money damages and not the return of the property. Specifically, the trial court asked Suarez Enterprises "Are you seeking injunctive relief for the return [of the property], or just money damages?" Suarez Enterprises answered:

> We are not seeking injunctive relief, Your Honor. We don't want to waste the Court's time with that because— because the items weren't returned promptly, [Suarez Enterprises] had to go out and purchase new equipment to put in that Mansfield location. So this case became a damages case, and we didn't feel it was incumbent upon the court's time to go through an injunction hearing, so we passed the injunction hearing and just went on into our lawsuit.
>
> What we're seeking today is we are seeking damages for the equipment that was unlawfully restrained....

The record shows no other statement by Suarez Enterprises respecting the recovery it sought. Suarez Enterprises was not entitled to change its election of damages for conversion after the case was submitted. *See Horlock,* 614 S.W.2d at 484. Accordingly, we conclude that in this case, on this record, the return of the property plus damages for loss of use is not a proper measure of damages. Issue two, subpart (a), is decided against Suarez Enterprise.

We conclude the trial court did not err when it determined the proper measure of damages was the fair market value of the property at the time and place of the conversion. Based on our conclusion that Suarez Enterprises elected not to pursue the return of the property plus damages for loss of use, we need not address issue two, subparts (b) and (c).

## II. CHALLENGES TO THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSION OF LAW AS TO FAIR MARKET VALUE

In issue three Suarez Enterprises challenges the sufficiency of the evidence to support the trial court's findings of fact that it failed to prove the fair market value of the converted property. In issue one, subpart (b), Suarez Enterprises challenges the trial court's conclusion of law that "[Suarez Enterprises] failed to produce any evidence of fair market value ... [so] [Suarez Enterprises] takes nothing on its claim for conversion." In their cross appeal, PNYX, GAMR, and Mantas challenge the trial court's findings of fact that Suarez Enterprises complied with and did not breach the lease.

### A. *Standards of Review*

#### 1. Findings of Fact

■ In an appeal from a bench trial, findings of fact carry the same weight as a jury verdict. *See OAIC Commercial As-*

*sets, L.L.C. v. Stonegate Village, L.P.*, 234 S.W.3d 726, 736 (Tex.App.-Dallas 2007, pet. denied). Unchallenged findings of fact are conclusive on appeal, unless the contrary is established as a matter or law or there is no evidence to support the findings. *See OAIC Commercial*, 234 S.W.3d at 736.

When examining a legal sufficiency challenge, an appellate court reviews the evidence in the light most favorable to the challenged finding and indulges every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). An appellant attacking the legal sufficiency of an adverse finding on an issue on which it has the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). The appellant must show that there is no evidence to support the fact finder's finding and that the evidence conclusively establishes the opposite of the finding. *See Dow*, 46 S.W.3d at 241. The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fairminded fact finder to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827. The fact finder is the sole judge of witness credibility and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819.

In a factual sufficiency review, an appellate court considers and weighs all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998). An appellant attacking factual sufficiency with respect to an adverse finding on which it had the burden of proof must demonstrate that the finding is against the great weight and preponderance of the evidence. *Dow*, 46 S.W.3d at 242. An appellate court sets aside the finding only

if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). The appellate court may not substitute its judgment for that of the trier of fact or pass on the credibility of the witnesses. *See Ellis*, 971 S.W.2d at 407.

### 2. Conclusions of Law

An appellate court conducts a de novo review of a trial court's legal conclusions. *Bundren v. Holly Oaks Townhomes Ass'n Inc.*, 347 S.W.3d 421, 430 (Tex.App.-Dallas 2011, pet. denied); *see also BMC Software Belgium N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002) (discussing special appearance). A trial court's conclusions of law are independently evaluated to determine whether the trial court correctly drew the legal conclusions from the facts. *Bundren*, 347 S.W.3d at 430; *see also BMC Software*, 83 S.W.3d at 794. Even if the appellate court determines a conclusion of law is erroneous, the erroneous conclusion does not require reversal if the trial court rendered the proper judgment. *See Bundren*, 347 S.W.3d at 430; *see also BMC Software*, 83 S.W.3d at 794.

### B. Fair Market Value

In issue three, Suarez Enterprises challenges the sufficiency of the evidence to support the trial court's specific findings of fact that "At the time of the aforementioned conversion of the disputed property, the disputed property did have some market value," and "[Suarez Enterprises] did not present any evidence on the fair market value of the disputed property[,][it] merely presented value of replacement cost, which is not fair market value." In an argument that we assume is in the alternative to its contentions in its first issue, Suarez Enterprises maintains that, in this case, the fair market value and

replacement cost are identical. PNYX, GAMR, and Mantas respond that there is no evidence in the record that the fair market value and the replacement cost of the equipment are identical.

Suarez Enterprises argues the following testimony of Robert Suarez, the president of Suarez Enterprises, as to damages conclusively establishes that the fair market value is identical to the cost of replacement in this case:

> COUNSEL: Look's like there is a check from R.J. [Suarez] Enterprises, Inc.[,] for $26,000?
>
> SUAREZ: Correct.
>
> COUNSEL: Do you recall what that was for?
>
> SUAREZ: That's the check that I wrote as the—as one of the officers of the corporation to pay for the equipment for this store.
>
> COUNSEL: And in fact, that's for equipment that was ordered on May 26th, 2006; is that correct?
>
> SUAREZ: Correct, yes.
>
> \* \* \*
>
> COUNSEL: [A]nd what was the cost to R.J. Suarez Enterprises, Inc.[,] for the purchase of that equipment to replace?
>
> SUAREZ: $23,400.82.
>
> \* \* \*
>
> SUAREZ: I can't go down to a used restaurant auction and buy equipment. I have to buy what they tell me I have to buy. It's in my franchise agreement, period.

The record also shows that, during argument, the following exchange took place between Suarez Enterprises' counsel and the trial court:

> COURT: What evidence do you-all have of the fair market value of the five pieces of equipment we discussed at the time of the alleged conversion, as opposed to the value of the replacement cost?
>
> COUNSEL: The value from the time of the conversion would be the statements from 2004 and 2006 that shows the value of the equipment when—
> . . . .
>
> COURT: Okay. My recollection was that that was the value—that was the purchase price, correct?
>
> COUNSEL: That was the purchase price of the equipment in 2006.
>
> COURT: Okay. What evidence do we have—my understanding of the law, and I'm reading from O'Connor's talking about damage to property, it's just the general—plaintiff cannot rely on the purchase price of the property to establish market value. It cites a case. "Purchase price alone is legally insufficient to establish market value." So what other evidence do we have of the fair market value of the property at the time it was allegedly converted?
>
> COUNSEL: Your Honor, we have my client's testimony as to what he had to pay for the equipment, and what it was worth to him at the time. He testified if he couldn't get the equipment, the value of it was what it would cost to replace because the value is either zero or what it cost to replace. He testified he can't buy it used, so it requires him to order it new.

■ We conclude Suarez Enterprises has not shown that there is no evidence to support the trial court's findings that "At the time of the aforementioned conversion of the disputed property, the disputed property did have some market value," and "[Suarez Enterprises] did not present any evidence on the fair market value of the disputed property[,] [it] merely presented value of replacement cost, which is

not fair market value." *See Dow*, 46 S.W.3d at 241. Nor has it shown that the evidence conclusively establishes the opposite of those findings. *See Dow*, 46 S.W.3d at 241. Also, we conclude that Suarez Enterprises has not demonstrated that the trial court's findings are against the great weight and preponderance of the evidence. *Dow*, 46 S.W.3d at 242. Finally, we cannot agree with Suarez Enterprises contention that replacement value and fair market value are identical. The record shows Suarez's testimony and the description of that testimony by counsel address cost of replacement and not fair market value. As we concluded above as to issue one, subpart (a), and issue two, subpart (a), the measures of damages are different and distinct. We also note that Suarez Enterprises complains of the trial court's finding that the "disputed property did have some market value." However, it does not identify how the evidence was insufficient to support that finding.

Issue three is decided against Suarez Enterprises.

Now we address Suarez Enterprises's issue one, subpart (b) where it challenges the trial court's conclusion of law that "[Suarez Enterprises] failed to produce any evidence of fair market value ... [so] [Suarez Enterprises] takes nothing on its claim for conversion." We have already concluded that Suarez Enterprises has not shown there is no evidence to support the trial court's findings of fact related to the fair market value of the property to establish the opposite of those findings. Also, it has not demonstrated that those findings are against the great weight and preponderance of the evidence. The trial court's findings of fact that "At the time of the aforementioned conversion of the disputed property, the disputed property did have some market value" and "[Suarez Enterprises] did not present any evidence on the

fair market value of the disputed property[,] [it] merely presented value of replacement cost, which is not fair market value" support the conclusions of law that "[Suarez Enterprises] failed to produce any evidence of fair market value ... [so] [Suarez Enterprises] takes nothing on its claim for conversion." Accordingly, we conclude the trial court did not err when it concluded the fair market value was the proper measure of damages, not replacement cost, and rendered a take-nothing judgment.

Issue one, subpart (b), is decided against Suarez Enterprises.

### C. Breach of the Lease

In a cross-issue, PNYX, GAMR, and Mantas argue the trial court erred when it rendered a judgment against them and ordered that they take nothing on their claim for breach of the lease. Specifically, PNYX, GAMR, and Mantas challenge the sufficiency of the evidence to support the trial court's findings of fact that "[Suarez Enterprises] fully complied with all of its contractual obligations with [ ] PNYX, including any obligations to make monetary payments," and "[Suarez Enterprises] did not breach any of its contractual obligations with [ ] PNYX." PNYX contends that it established as a matter of law that Suarez Enterprises was a holdover tenant and that Suarez Enterprises did not pay PNYX the rent required by the lease agreement for a holdover tenancy.

PNYX, GAMR, and Mantas filed a counterclaim against Suarez Enterprises for breach of the lease. They claimed that Suarez Enterprises breached the lease when it (1) failed "to pay rent and triple net charges"; (2) abandoned the property; (3) attempted to remove, through acts of trespass, items located within the demised premises; and (4) caused damage to the premises through

acts of vandalism in its attempt to re-enter the premises in order to remove certain items. On appeal, PNYX, GAMR, and Mantas do not challenge the trial court's findings of fact that "[Suarez Enterprises] did not commit any trespass to the premises at issue, as [Suarez Enterprises] had the right of possession during the times relevant to the controversy at issue," and "[Suarez Enterprises] did not cause any damage to the premises at issue beyond such reasonable wear [and] tear, if any, as allowed pursuant to the terms of their agreement." These unchallenged findings of fact are conclusive on appeal. *See OAIC Commercial,* 234 S.W.3d at 736. These findings dispose of three of the theories on which PNYX, GAMR, and Mantas claim Suarez Enterprises breached the lease. As a result, the only remaining theory which we address is that Suarez Enterprises allegedly breached the lease by failing "to pay rent and triple net charges."

PNYX, GAMR, and Mantas contend they conclusively established that Suarez Enterprises breached the lease based on its failure to pay rent. They assert that although they agreed to permit a holdover of the lease, they did not waive payment for the holdover tenancy. They point to Suarez's testimony, admitting he agreed to pay rent for the holdover tenancy. Although Suarez admitted that he did not pay the six days holdover rent, the record also shows that Suarez testified Mantas agreed to allow him "to hold over for a few days in June to get [the] de-identification done," he agreed to pay for a few days rent during the holdover, and there was no mention of any triple net charges that were owed or overdue, or that any monies were owed during his conversation with the landlord.

Based on the record, we conclude PNYX, GAMR, and Mantas have not shown that there is no evidence to support the trial court's findings that "[Suarez Enterprises] fully complied with all of its contractual obligations with [ ] PNYX, including any obligations to make monetary payments," and "[Suarez Enterprises] did not breach any of its contractual obligations with [ ] PNYX." *See Dow,* 46 S.W.3d at 241. Nor did they show that the evidence conclusively establishes the opposite of those findings. *See Dow,* 46 S.W.3d at 241. Also, we conclude that PNYX, GAMR, and Mantas have not demonstrated that the trial court's findings are against the great weight and preponderance of the evidence. *Dow,* 46 S.W.3d at 242.

The cross-issue is decided against PNYX, GAMR, and Mantas.

## IV. ATTORNEY'S FEES AND EXPENSES

In issue four, Suarez Enterprises argues the trial court erred when it denied Suarez Enterprises' request for attorney's fees and expenses because the conversion finding was based on and related to a contract. PNYX, GAMR, and Mantas respond that (1) generally, attorney's fees cannot be awarded for a conversion cause of action, (2) the trial court did not make any findings of fact or conclusions of law that the conversion claim was intrinsically founded on the interpretation of contract and Suarez Enterprises did not request additional findings and conclusions, and (3) even if the conversion claim were intrinsically founded on the interpretation of contract, Suarez Enterprises cannot be awarded attorney's fees because it was not awarded any damages.

### A. Standard of Review and Applicable Law

■ Generally, an appellate court reviews a trial court's decision to award at-

torney's fees for an abuse of discretion. *Bocquet v. Herring,* 972 S.W.2d 19, 20–21 (Tex.1998); *Sharifi v. Steen Automotive LLC,* 370 S.W.3d 126, 152 (Tex.App.-Dallas 2012, no pet.). The trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

 Generally, attorney's fees cannot be awarded for a conversion cause of action. *See Broesche v. Jacobson,* 218 S.W.3d 267, 277 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). However, if there is sufficient evidence that the conversion claim is so intertwined with the contract which underlies the cause of action such that the action is "intrinsically founded on the interpretation of the contract," a party may be entitled to recover attorney's fees. *See High Plains Wire Line Svcs., Inc. v. Hysell Wire Line Svcs., Inc.,* 802 S.W.2d 406, 408 (Tex.App.-Amarillo 1991, no writ). Also, the trier of fact may consider attorney's fees in a conversion action when determining exemplary damages, but not when calculating actual damages. *See Wiese v. Pro Am Svcs. Inc.,* 317 S.W.3d 857, 861, (Tex.App.-Houston [14th Dist.] 2010, no pet.). Nevertheless, in order to recover attorney's fees, a party must prevail on its claim and recover damages. *See MBM Fin. Corp. v. Woodlands Operating Co. L.P.,* 292 S.W.3d 660, 666 (Tex.2009) (discussing breach of contract claims).

### B. Application of the Law to the Facts

 The trial court ordered that Suarez Enterprises take nothing on its claims. Accordingly, even if the conversion claim were "intrinsically founded on the interpretation of the contract," we conclude the trial court did not err when it denied Sua-rez Enterprises request for attorney's fees because it was not awarded any damages. *See MBM Fin.,* 292 S.W.3d at 666.

Issue four is decided against Suarez Enterprises.

## VI. CONCLUSION

The evidence was sufficient to support the trial court's findings of fact that the converted property had some market value and Suarez Enterprises did not present evidence of the fair market value, only replacement cost. Also, the trial court did not err when it concluded the proper measures of damages for a conversion claim was the fair market value at the time and place of the conversion. Further, the trial court did not err when it denied Suarez Enterprises' request for attorney's fees. Finally, there was sufficient evidence to support the trial court's findings of fact that Suarez Enterprises did not breach the lease. The trial court's final judgment is affirmed.