AFFIRM; Opinion Filed January 23, 2013.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-00715-CV

### SMITH PROTECTIVE SERVICES, INC., Appellant

### V.

### FEDEX NATIONAL LTL, INC., Appellee

On Appeal from the 95th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-08-13718-D

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Richter[1]
Opinion By Justice Lang

Smith Protective Services, Inc. appeals following a bench trial based on partially stipulated

facts. The trial court awarded FedEx National LTL, Inc. breach of contract damages for losses

FedEx sustained as a result of the theft of cargo at a FedEx terminal guarded by Smith security

officers. In two issues, Smith argues the trial court erred in concluding Smith breached the contract

and failed to prove its mitigation defense. We affirm the trial court's judgment.

### I. BACKGROUND

Relevant stipulations established that in May 2005, FedEx's corporate predecessor, Watkins

---

[1] The Honorable Martin Richter, Retired Justice, Fifth District Court of Appeals, Dallas, Texas, sitting by assignment.

Motor Lines, Inc., contracted with Smith for guard services. Approximately one year later, Watkins assigned the contract to FedEx. Under the contract, Smith was to provide security officers for FedEx's Fort Worth terminal.

The theft occurred in the early morning hours of June 2, 2008. Thieves entered the terminal through a hole cut in the perimeter fence and stole merchandise from several trailers. The hole had been cut the previous night and was the second hole cut in three days. At the time of the theft, Smith guard Joshua Suwal was on duty.

Less than a week after the theft, FedEx terminated the contract with Smith. The parties stipulated that during the term of the contract, Smith was paid a total of $832,075.36 for its services. Further, the parties stipulated that (a) the contract was valid; (b) FedEx performed its obligations; and, (c) FedEx sustained damages in the amount of $108,398.52 as a result of the theft.

Based on the live pleadings and stipulations, the issues at trial were whether Smith breached the contract by failing to perform its obligations under the contract, including conducting regular patrols and indemnifying FedEx, and whether FedEx mitigated its damages.[2] Ben Sittig, a Watkins Terminal Manager at the time the contract was executed and a FedEx Service Center Manager at the time of the theft, testified that under the contract Smith guards were to

(1) guard against fire, theft, damage, and trespass;
(2) permit only duly authorized persons to enter the premises;
(3) make regularly scheduled tours of the premises, checking all gates, doors, windows, and lights;
(4) report any unusual incidents or hazardous conditions as soon as practicable to FedEx-designated representatives;
(5) submit a written report covering all incidents or hazardous conditions at the conclusion of each tour; and

---

[2] Also tried were issues of whether Smith breached the contract by failing to carry property damage liability insurance naming FedEx as an additional named insured and Smith's own breach of contract counterclaim against FedEx for terminating the contract without thirty-days' notice and "good cause" as required by the contract. The trial court concluded both these claims failed, and neither party challenges the judgment in that regard. Accordingly, we limit our recitation of facts to those that apply to the issues before us.

(6) comply with post orders which were attached to the contract.[3]

According to Sittig, the "unusual incidents or hazardous conditions" that the guards were to report included "[a]larms, break-ins, unauthorized personnel, fires, [and] hazardous leaks," and the designated representatives who were to receive these reports were FedEx operations manager Lynn Moore, supervisor Brandon Bode, or himself.

At the time Watkins entered into the contract with Smith, the terminal was closed on holidays only. Although the contract provided for regular patrols or "tours of the premises," the guards were expected at that time to "just operate the gate" and "log the trucks" when the terminal was open and to patrol when the terminal was closed.

In 2006, around the time FedEx succeeded Watkins, the terminal operating hours changed to a "restricted schedule," and guards were expected to patrol not only on holidays, but on weeknights and weekends as well. Sittig testified that the patrols were to occur every two hours. This was communicated orally and in writing to Smith managers, and they agreed to the schedule. Sittig further testified he met quarterly with Smith managers to discuss the guards' performance and "make sure everything was secure," and he did not remember any manager disputing that patrols were required. Daily officer reports ("DOR"), required by the post orders, reflected that most guards were regularly patrolling the terminal, and Sittig had personally observed them patrolling.

Although the terminal was protected by a perimeter fence alarm system, the first cut in the fence did not trigger the alarm, but was discovered by the lawn maintenance crew mid-morning on May 30. Sittig was advised that same day. He did not inform any FedEx supervisors or Smith managers of the hole, but, before leaving the terminal for the weekend, instructed the guard on duty

---

[3] The post orders contained additional "mandatory"work rules and regulations such as the requirement to monitor all activity at the front gate and the names of the FedEx representatives to contact in case of an emergency.

—3—

to monitor the area and to inform the other guards working that weekend of the need to monitor that specific area.

On Sunday, June 1, at around 5:00 a.m., an alarm company operator called Sittig to inform him that the fence alarm had been triggered. The operator had already contacted Suwal, the guard on duty at the time. Because the operator did not express any concern, and other false alarms had occurred in recent weeks, Sittig assumed this alarm was false. Sittig directed the operator to place the system on "test mode" so that if the alarm was triggered again, it could be disregarded. The following morning, Sittig learned from dock supervisor Johnny Pruitt that a second hole had been cut in the fence and the theft at issue here had occurred. Sitting testified he went to the terminal after receiving the phone call and found that the thieves had stolen cargo from trucks parked along the fence. Sittig later learned that Suwal had discovered the second hole during his overnight shift on May 31 and informed Pruitt about it during his overnight shift on June 1. In Sittig's opinion, stronger security measures, including moving the trailers from the fence, could have been taken had Suwal and Pruitt reported the second hole to him or Moore, the operations manager. Sittig acknowledged that stronger security measures could also have been taken if he had reported the first hole to Smith management or FedEx superiors. He acknowledged, too, that he was aware that not all guards were patrolling regularly, but he did not report this to Smith managers.

Sittig's testimony that he met with Smith managers quarterly to discuss the guards' performance and that the guards did not make scheduled tours of the premisses prior to 2006 was corroborated by Paul Atwell, a Smith operations manager from 1995 to 2005. Also corroborated was Sittig's testimony that Smith guards were required to regularly patrol the premises once the operating hours of the terminal changed. Smith's "post supervisor" Santos Gracia and FedEx operations manager Moore agreed that Smith guards were required to conduct patrols when the terminal was

-4-

closed, although Gracia believed they were to patrol the dock area only and Moore believed they were to patrol only the fence line.

FedEx regional security manager Nolan Burns testified he investigated the theft and prepared a report. Sittig, Pruitt, Suwal, and two other Smith guards who were on duty the weekend the theft occurred were interviewed as part of the investigation. Burns learned from the interviews that none of the guards was aware of the requirement of fence patrols. He also learned that Pruitt and Suwal found several trailers from which locks were removed the night of June 1. No merchandise was missing, however, and neither Pruitt nor Suwal reported their findings to Sittig or Moore. Burns testified that he inspected the area where the theft occurred and found no evidence that any "devices" such as a forklift or dolly were used. Based on that, he believed the stolen cargo was removed by hand over a period of at least three hours. He concluded the theft occurred between midnight and 4:30 a.m. and that several people were involved. He further concluded that the "security failure" resulted from several factors including the failure of the guards to regularly patrol the premises and the failure to promptly notify proper personnel about the second cut in the fence and the trailers that had been tampered with. In his opinion, the thieves knew the guards were not patrolling, and the theft could have been prevented if regular patrols had occurred.

Jeffrey Greer, FedEx National's vice president and general counsel, testified he met with Smith personnel on June 3, 2008 and learned from them for the first time that they did not believe the security guards were required to conduct patrols. He made the decision to terminate the contract with Smith after a third cut in the fence was discovered June 4, 2008. He looked at the contract "to see what we'd have to do to get paid for our losses," and on October 1, 2008, made a written demand to Smith for payment for the losses. Although the contract provided that Smith was to "indemnify, defend and hold harmless [FedEx] from all losses arising out of . . . property damages, claims, suit,

damages, expenses or liabilities arising out of or connected in any with [Smith's] operations," Smith did not tender payment. After the record was closed, the trial court rendered judgment for FedEx, specifically finding Smith breached its obligation to provide patrol services and indemnify FedEx, and signed findings of fact and conclusions of law.[4]

---

[4] The findings of fact and conclusions of law include, in relevant part, the following:

**FINDINGS OF FACT**

2. To ensure the protection of property at the Terminal against theft, the Contract states and Smith agreed that Smith's "Guard personnel shall . . . [m]ake regularly scheduled tours of the premises." Smith agreed to require its security guard on duty to "[r]eport any unusual incidents or hazardous conditions as soon as practicable to representatives designated by [FedEx]." Smith also agreed to "[p]ermit only duly authorized persons to enter the premises."

5. During regular and irregular meetings with Smith's managers, FedEx designated representatives that should be contacted by Smith to report unusual incidents. In May and June 2008, those representatives were Terminal Manager Ben Sittig, Operations Manager Lynn Moore, and Dock Manager Brandon Bode.

6. During meetings with Smith's managers, FedEx's managers also instructed Smith's managers that Smith's guards were to conduct tours of the premises bi-hourly when the Terminal was closed and to remain at the gate logging trucks during hours when the Terminal was open.

8. Based on the observations of its employees and on documents it received from Smith, FedEx reasonably believed that Smith's guards were performing regular patrols of the Terminal premises during hours that the Terminal was closed.

12. At 4:47 AM on Sunday, June 1, the Terminal's alarm system sounded.

13. A resulting call from the alarm monitoring company, ADT, to the guard shack prompted Smith security guard Josh Suwal to look behind the trailers parked along the north fence for the first time. Suwal discovered during that inspection at approximately 5:00 AM Sunday June, 1, that a second hole had been cut in the fence. He also observed that one nearby trailer had a door ajar and a shipping pallet was disturbed, but no merchandise was missing.

14. Suwal did not inform his supervisors, any of FedEx's designated representatives, or the police of his findings at any point during or at the completion of his shift. Nor did any other Smith agent or employee inform any of FedEx's designated representatives of Suwal's findings.

15. Suwal's and Smith's failure to inform any of FedEx's designated representatives of the unusual incident constituted a breach of the Contract by Smith.

17. Suwal went off duty at 7:00 Sunday morning, June 1.

18. Suwal returned late in the same evening, Sunday, June 1 . . . for another overnight shift.

19. Suwal did not inspect the fence, patrol the dock or perimeter fence, or leave the guard shack at any time during his eight-hour shift until 7:00 AM on Monday, June 2.

20. Suwal's failure to patrol the terminal's premises during his overnight shift from 11:00 PM on June 1 to 7:00 AM on June 2 constituted a breach of the Contract by Smith.

21. Between midnight and 4:30 on the morning of Monday, June 2, thieves entered the Terminal yard undetected and broke into four trailers by cutting the locks with bolt cutters. While in the Terminal yard, the thieves were able to steal a large quantity of electronics undetected.

22. Smith's failure to prevent unauthorized persons from entering the Terminal's premises during Josh Suwal's overnight shift from 11:00 PM on June 1 to 7:00 AM on June 2 constituted a breach of the Contract.

24. Smith failed to conduct regularly scheduled patrols of the Terminal premises as required under the Contract.

25. Smith's failure to perform these patrols was a breach of the Contract by Smith.

26. Had Smith guards performed the patrols required under the Contract, the theft would have been prevented.

27. No acts or omissions by FedEx or its employees or agents caused the theft to be successful.

29. FedEx first learned of Smith's contractual breach of failing to conduct patrols on or about June 4, 2008. Smith informed its on-site supervisor and guards that they were to conduct four patrols during each eight-hour shift during hours that the Terminal was closed.

30. During the overnight shift from June 4-5, 2008, the Smith guard did not conduct any patrols, and FedEx experienced another break-in at the Terminal.

31. Smith's failure to conduct patrols on the night of June 4-5 was a breach of the Contract by Smith.

32. On October 1, 2008, FedEx's general counsel . . . present[ed] FedEx's claim to Smith and demand[ed] payment for FedEx's losses. Smith did not tender the just amount owed within thirty (30) days.

33. Smith's refusal to indemnify FedEx for its losses, despite notice and demand, constituted a breach of the Contract on the part of Smith.

34. FedEx suffered damages in the amount of $108,398.52 that were caused by Smith's contractual breaches.

36. The Court does not find that FedEx failed to act reasonably to avoid the damages it incurred as a result of Smith's breaches; instead, the Court finds FedEx acted reasonably.

**CONCLUSIONS OF LAW**

4. . . . Smith's failure to conduct [regularly scheduled tours of the premises] constitutes a breach of the Contract.

5. After discovering that a hole had been cut in the fence and a nearby trailer had been opened on the morning of June 1, 2008, Smith's security guard Josh Suwal did not notify a FedEx designated representative of the fence cut, which constituted an unusual incident. Such failure constitutes a breach of the Contract.

6. Smith's conduct permitted unauthorized persons to enter the Terminal and thereby breached the Contract.

7. Smith agreed, under the terms of the Contract, to "indemnify, defend and hold harmless [FedEx] from all losses arising out of - - - property damages, claims, suits, damages, expenses or liabilities arising out of or connected in any way with [Smith's] operations performed on behalf of [FedEx]." Smith's refusal to indemnify FedEx, after notice and demand, constituted a breach of the Contract.

8. As a result of Smith's breaches, FedEx did not receive the benefit of its bargain with Smith, and Smith's breaches of the Contract were the legal causes of FedEx's damages.

18. The doctrine of mitigation of damages prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff. Where a party is entitled to benefits of a contract and can save itself from the damages resulting from the contract's breach with reasonable exertions, it is that party's duty to make such exertions. E.G., Walker v. Salt Flat Water Co., 96 S.W.2d 231, 232 (Tex. 1936). However, where the party in default was in duty bound to prevent damages, and had equal opportunity with the person injured for performance, and equal knowledge of the consequences of nonperformance, he cannot, while the contract is in force and effect, be heard to say that the plaintiff might have performed for him, and thus avoided such damages. Id.

19. "The mitigation-of-damages doctrine requires an injured party, following a breach, to exercise reasonable care to minimize his damages if it can be done with slight expense and reasonable effort." Montgomery v. Byrd, No. 14-07-01015-CV, 2009 Tex. App. LEXIS 6635, at *26 (Tex. App.—Houston [14th Dist.] Aug. 25, 2009) (not designated for publication). Because an injured party does not incur damages that can be mitigated until after the breach has occurred, it is only required to undertake its mitigation efforts "following a breach." Montgomery, 2009 Tex. App. LEXIS 6635, at *26; Allen v. American Gen. Fin. Inc., 251 S.W.3d 676, 686 (Tex. App.—San Antonio 2007, pet. granted).

21. FedEx did not fail to exercise reasonable care to minimize its damages. Smith was duty bound to prevent damages to FedEx, and it had equal opportunity with FedEx for performance and equal knowledge of the consequences of nonperformance. Smith has not established its affirmative defense of failure to mitigate damages.

unusual incidents to designated FedEx representatives, (c) prevent unauthorized persons from entering the premises, and (d) establish its affirmative defense of mitigation of damages form the basis of this appeal. Specifically, Smith challenges findings 5, 6, 8, 15, 20, 22, 24, 25, 26, 27, 29, 31, 32, 34,36 and conclusions 4, 5, 6, 8, 9, 18, 19, and 21. Smith asserts the evidence is legally and factually insufficient to support these findings and the conclusions are incorrect.

## II. STANDARD OF REVIEW

### A. Findings of Fact

In an appeal from a bench trial, the trial court's findings of fact have the same weight as jury findings. *Walker v. Anderson*, 232 S.W.3d 899, 907 (Tex. App.—Dallas 2007, no pet.). Unchallenged findings are binding on the parties and appellate court. *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.). Challenged findings are reviewed under the same legal and factual sufficiency standards used in reviewing jury findings. *Walker*, 232 S.W.3d at 907. Because the trial court, like the jury, is the sole judge of the credibility of the witnesses and the weight to be given to the testimony, the trial court's factual determinations are given deference. *Rich*, 274 S.W.3d at 884.

In determining whether the evidence is legally sufficient, the appellate court views the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *Aland v. Martin*, 271 S.W.3d 424, 429 (Tex. App.—Dallas 2008, no pet.). If the challenged finding is on an issue for which the appellant did not have the burden of proof, the appellant must demonstrate no evidence exists to support the adverse finding. *Id.* If the challenged finding is on an issue for which the appellant had the burden of proof, the appellant must demonstrate that the evidence conclusively establishes the opposite finding. *R.J. Suarez Enters. Inc. v. PNYX L.P.*, 380 S.W.3d

238, 245 (Tex. App.—Dallas 2012, no pet.).

In determining whether the evidence is factually sufficient, the appellate court considers and weighs all the evidence, both for and against the finding. *Id.* In challenging the factual sufficiency of the evidence to support a finding on which the appellant had the burden, the appellant must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Id.* In challenging the factual sufficiency of the evidence to support a finding on which the appellant did not have the burden, the appellant must demonstrate the evidence supporting the finding is so weak as to be clearly wrong and unjust. *THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 572 (Tex. App.—Amarillo 2010, pet. denied). Under both the legal and factual sufficiency standards, when the trial court finds a single cause of action is supported by multiple bases, an appellate court will affirm if the evidence supports any of the findings. *See Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 623 (Tex. App.—Fort Worth, 2006, pet. denied).

### B. Stipulated Facts

Stipulated facts are binding on the parties, the trial court, and the reviewing court. *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 698 (Tex. App.—Dallas 2012, no pet.). An appellate court does not review the legal or factual sufficiency of the evidence of stipulated facts. *Id.*

### C. Conclusions of Law

An appellate court reviews a trial court's conclusions of law de novo, evaluating them to determine whether the trial court correctly drew the legal conclusions from the stipulated or contested facts. *Suarez*, 380 S.W.3d at 245; *RPK Capital*, 360 S.W.3d 698. The trial court's conclusions of law will be upheld if any legal theory supported by the evidence can sustain the judgment. *Fulgham v. Fischer*, 349 S.W.3d 153, 158 (Tex. App.—Dallas 2011, no pet.).

## III. APPLICABLE LAW

### A. Breach of Contract

A breach of contract occurs when a party fails to perform an act it has expressly or impliedly promised to perform. *Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center E., Inc.*, 290 S.W.3d 554, 561 (Tex. App.—Dallas 2009, no pet.). The elements of a breach of contract claim are: (a) the existence of a valid contract; (b) the plaintiff's performance or tentative performance; (c) the defendant's breach; and, (d) damage to the plaintiff resulting from the breach. *Id.* When construing a written contract, the appellate court's primary duty is to ascertain and give effect to the intentions the parties have objectively expressed in the instrument. *Lexis v. Foxworth*, 170 S.W.3d 900, 903 (Tex. App.—Dallas 2005, no pet.). The appellate court may neither rewrite the contract nor add to its language, but must enforce it as written. *Id.*

### B. Mitigation of Damages

The doctrine of mitigation of damages generally prevents an injured party from recovering breach of contract damages that could be avoided by the injured party's reasonable efforts upon learning of the breach. *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995); *Pulaski Bank & Trust Co. v. Tex. Am. Bank/Fort Worth, N.A.*, 759 S.W.2d 723, 735 (Tex. App.—Dallas 1988, writ denied). However, when the defaulting party is duty bound to prevent damages, and has the same opportunity to mitigate as the injured party and equal knowledge of the consequences of not doing so, the defaulting party cannot complain of the injured party's failure to mitigate. *Walker v. Salt Flat Water Co.*, 96 S.W.2d 231, 232 (Tex. 1936); *Trinity Universal Ins. Co. v. Fuller*, 524 S.W.2d 335, 338 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.). Mitigation of damages is an affirmative defense the breaching party must plead and prove. *Great Am. Ins.*, 908 S.W.2d at 426; *S & G Associated Developers, LLC v. Covington Oaks Condo. Owner's*

*Ass'n, Inc.*, 361 S.W.3d 210, 217 (Tex. App.—El Paso 2012, no pet.).

## IV. APPLICATION OF THE LAW TO THE FACTS

### A. Breach of Contract

Because of the parties' stipulations, the only element of FedEx's breach of contract claim at issue is Smith's breach. *See Worldwide Asset*, 209 S.W.3d at 561. FedEx alleged at trial, and the trial court found and concluded, that Smith breached the contract by failing to (a) conduct regular patrols of the premises, (b) notify a designated FedEx representative of the June 1, 2008 fence cut, (c) prevent unauthorized persons from entering the terminal, and (d) indemnify FedEx. Smith challenges the first three of these breaches found by the trial court and also asserts the contract "was only for the protection of the property of FedEx" and thus Smith is not responsible for FedEx's losses. However, Smith does not challenge the finding and conclusion pertaining to indemnification (finding 33 and conclusion 7). Because an unchallenged finding is binding on the parties and court, and a finding that Smith failed to perform at least one obligation under the contract is sufficient to support the finding that Smith breached the contract, Smith's contention that the trial court erred in concluding a breach occurred cannot be sustained on this basis alone. *See id.*; *Rich*, 274 S.W.3d at 884; *Main Place*, 192 S.W.3d at 623. Additionally, as FedEx points out, Smith presents no argument or authority in support of its challenge to the finding and conclusion concerning its failure to notify FedEx representatives of the fence cut (findings 5, 14 and 15 and conclusion 5). Accordingly, Smith has waived any error with respect to this portion of the trial court's judgment, and the judgment can be affirmed on this basis also. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Fulgham*, 349 S.W.3d at 158 ("failure to cite legal authority or provide substantive analysis results in waiver of the complaint"). Nonetheless, we address the

merits of Smith's remaining arguments.

To prevail on its complaint that the trial court erred in concluding a breach occurred, Smith must demonstrate the evidence is legally and factually insufficient to support the court's findings that it failed to conduct regular patrols and prevent unauthorized persons from entering the terminal, and the trial court erred in concluding these failures constitute a breach. Because Smith challenges issues which FedEx bore the burden of proving at trial, to establish the evidence is legally insufficient, Smith must demonstrate no evidence exists to support these findings. *See Aland*, 271 S.W.3d at 429. To establish the evidence is factually insufficient, Smith must demonstrate the evidence supporting the findings are so weak as to be clearly wrong and unjust. *Perea*, 329 S.W.3d at 572.

Smith contends the evidence is insufficient to support the findings regarding patrols (findings 6, 8, 20, 24, 25, 26, 31) because no evidence exists that Smith agreed to bi-hourly patrols "being part of the original contract" or that the parties modified the guards' duties. In making this argument, Smith does not challenge the trial court's finding that the contract provides for regularly scheduled patrols (finding 2). Instead, Smith argues that because, at the time the contract was executed, its guards were expected to "just man the gate," FedEx was required to plead that the contract was modified and demonstrate the modification. Smith contends the only evidence of a modification was Sittig's testimony that the guards were expected to patrol every two hours once the terminal's operating hours were reduced, that he communicated this to Smith managers at the time of the change and at quarterly meetings, and that Smith managers agreed to perform the patrols. Smith contends Sittig's testimony is not credible because he did not testify at his deposition about the quarterly meetings and he did not identify the Smith managers with whom he communicated.

Because Smith does not challenge the trial court's finding that Smith specifically agreed to

"[m]ake regularly scheduled tours of the premises," it is binding on the parties and court and makes pleading and evidence of modification unnecessary. *See Rich*, 274 S.W.3d at 884. Moreover, although Smith discounts Sittig's testimony, the trial court assigns the weight to be given to Sittig's testimony. *See id.* By finding Smith failed to conduct regular patrols, the trial court necessarily believed Sittig's testimony, a determination we will not disturb on appeal. *See id.* Additionally, the record includes evidence other than Sittig's testimony concerning the patrols and the communication with Smith. Both Santos Gracia, a Smith "post supervisor," and FedEx operations manager Lindsay Moore agreed that the guards were required to conduct regular patrols when the terminal was closed, and documentary evidence reflected bi-hourly patrols were conducted. Viewed under the appropriate standards, we conclude the evidence is legally and factually sufficient to support the findings concerning the patrols. Because those findings include a finding that Smith did not patrol the premises regularly, we conclude the trial court correctly determined Smith breached the contract by failing to conduct regular patrols. *See Suarez*, 380 S.W.3d at 245; *Worldwide Asset*, 290 S.W.3d at 561.

We next address Smith's contention that the trial court erred in concluding Smith breached the contract by allowing unauthorized persons to enter the property. Smith argues the evidence is legally and factually insufficient to support the findings regarding entry of the property because the provision in the contract that Smith was to "[p]ermit only authorized persons to enter the premises" required only that Smith "insure[] that the access to the premises by visitors and employees was monitored and restricted." Smith further argues that the term "permit" requires an element of knowledge on the part of the actor, and FedEx failed to present any evidence that any of Smith's guards knowingly permitted any unauthorized person to access the premises. However, the term "knowingly" is not in the contract. "We may neither rewrite the contract nor add to its language."

-13-

*See Foxworth*, 170 S.W.3d at 903. Additionally, Smith does not challenge the findings that its guard, Joshua Suwal, worked an overnight shift June 1 and that thieves entered the terminal and broke into four trailers between midnight and 4:30 the morning of June 2 (findings 18 and 21). These findings are binding and support the trial court's conclusion that Smith breached the contract by allowing unauthorized persons to enter the property.

Finally, we address Smith's contention that the contract was only for the protection of FedEx's property. In making this contention, Smith relies on the fact that FedEx had an alarm system on the perimeter fence, but Smith was not responsible for monitoring it. Smith argues that if it had "been hired to 'protect' property other than that of FedEx, [it] would presumably have had an active role in monitoring the fence alarm from the beginning." This challenge to causation and damages cannot be sustained because Smith does not challenge the findings and conclusions regarding indemnification. According to the language of the indemnity provision, it encompassed "all losses arising out of . . . claims, . . . damages, expenses or liabilities arising out of or connected in any way with [Smith's] operations performed on behalf of [FedEx]." There is no limitation to FedEx's property. Further, Smith stipulated that FedEx's damages were caused by the theft, and the theft occurred while a Smith guard was on duty. This stipulation is binding. *RFK Capital*, 360 S.W.3d at 698.

We conclude the trial court did not err in finding a material breach occurred. Accordingly, we resolve Smith's first issue against it.

### B. Mitigation of Damages

In its second issue, Smith asserts the evidence is legally and factually insufficient to support the trial court's finding and conclusions that FedEx did not fail to exercise reasonable care to minimize its damages, Smith was duty bound to prevent damages to FedEx, Smith had the same

opportunity with FedEx to minimize the damages, Smith had equal knowledge of the consequences of failing to do so, and Smith failed to establish its defense of mitigation (finding 27 and 36 and conclusions 18, 19, 21). Because it bore the burden of establishing this affirmative defense, to establish the evidence is legally insufficient, Smith must demonstrate the evidence conclusively establishes the opposite finding. *See Aland*, 271 S.W.3d at 429. To establish the evidence is factually insufficient, Smith must demonstrate that the court's finding is against the great weight and preponderance of the evidence. *See Suarez*, 380 S.W.3d at 245.

Smith asserts the evidence reflects that, at the latest, FedEx became aware of Smith's failure to regularly patrol on May 30 when FedEx learned of the first cut in the fence. Smith contends FedEx should have informed Smith managers of the first cut "such that Smith could have taken any action to insure that fence patrols were conducted the evening of the actual theft." Smith asserts further that Sittig's and Burn's testimony about "what could, **and should** have been done upon the discovery of both the first cut . . . [and] second cut" demonstrates FedEx was obligated to take reasonable steps to mitigate its damages. Finally, Smith argues that the trial court erroneously relied on the holding in *Walker v. Salt Flat Water Co.* that the defaulting party is barred from relying on the doctrine of mitigation of damages when it could have prevented the harm. *See Walker*, 96 S.W.2d at 232. We disagree with Smith's contentions.

FedEx's duty to mitigate did not arise until it became aware that Smith guards were not patrolling regularly. *Pulaski*, 759 S.W.3d at 735. Although Smith contends FedEx became aware of this failure, at the latest, when FedEx learned of the first cut in the fence, the trial court found, and Smith does not challenge, that FedEx first learned of the lack of regular patrols "on or about June 4, 2008." This finding is binding. *Rich*, 274 S.W.3d at 884. Moreover, the record reflects Smith was contractually obligated to guard against damage to property; had, as a provider of guard services,

the same opportunity as, if not greater than, FedEx to minimize damages resulting from a theft; and had the same knowledge as FedEx of the consequences of failing to minimize damages, as evidenced by the indemnification provision. Smith has cited to us no evidence to the contrary and we could find none. Given the applicable legal standards, we conclude that Smith could not complain that FedEx was required to minimize its damages, and the trial court did not err in concluding Smith failed to establish its defense of mitigation. *See Fulgham*, 349 S.W.3d at 158. We resolve Smith's second issue against it.

## V. CONCLUSION

Having resolved both of Smith's issues against it, we affirm the trial court's judgment.

DOUGLAS S. LANG
JUSTICE

110715F.P05

—16—



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

SMITH PROTECTIVE SERVICES, INC., Appellant

No. 05-11-00715-CV     V.

FEDEX NATIONAL LTL, INC., Appellee

Appeal from the 95th Judicial District Court of Dallas County, Texas. (Tr.Ct.No. DC-08-13718-D).
Opinion delivered by Justice Lang, Justices Bridges and Richter participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's judgment. We **ORDER** that appellee Fedex National LTL, Inc. recover its costs of this appeal from appellant Smith Protective Services, Inc.

Judgment entered January 23, 2013.

DOUGLAS S. LANG
JUSTICE