ACCEPTED
01-14-00776-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/13/2015 6:10:37 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00776-CV

# In the Court of Appeals for the First Judicial District Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/13/2015 6:10:37 PM
CHRISTOPHER A. PRINE
Clerk

SCHLUMBERGER LIMITED AND
SCHLUMBERGER TECHNOLOGY CORPORATION,

*Appellants / Cross-Appellees*,

v.

CHARLOTTE RUTHERFORD,

*Appellee / Cross-Appellant.*

On Appeal from the
127th District Court at Houston, Texas

## APPELLANTS' REPLY BRIEF

Craig Smyser
Land Murphy
Justin Waggoner
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana Street, Suite 2300
Houston, Texas 77002-2700
[Tel.] (713) 221-2300
[Fax] (713) 221-2320

Sean D. Jordan
  State Bar No. 00790988
Kent C. Sullivan
Danica L. Milios
Peter C. Hansen
SUTHERLAND ASBILL & BRENNAN LLP
600 Congress Ave., Suite 2000
Austin, Texas 78701
[Tel.] (512) 721-2679
[Fax] (512) 721-2656
*sean.jordan@sutherland.com*

COUNSEL FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Index of Authorities.............................................................. iii

Summary of Argument...........................................................2

Argument .............................................................................5

   I.    The Court Has Jurisdiction To Consider Schlumberger's Appeal. ...............................................5

   II.   The TCPA Does Not Apply to Schlumberger's Claims Against Rutherford.............................................7

        A.    The TCPA Protects Public Communications with a Nexus to Participation in Government, Not Private Communications for Commercial Gain................................................8

            1.    The TCPA should be construed consistent with the express purpose set forth in its text. ...................................10

            2.    The *Cheniere Energy*, *Jardin*, and *Whisenhunt* decisions do not misconstrue the TCPA.............................12

        B.    The TCPA Is Inapplicable Because Schlumberger's Suit Is Not Premised on TCPA-Protected Communications. .....................15

            1.    Schlumberger's suit does not implicate the First Amendment concerns addressed by the TCPA. ...........................16

            2.    Applying the TCPA to a broad array of claims unrelated to the statute's purpose leads to unreasonable and absurd results. ...........................................18

III. Even Assuming the TCPA Applies, Schlumberger Met Its Evidentiary Burden To Prevent Dismissal of Its Claims. ...............................................21

    A.    The TCPA Imposes a Minimal Evidentiary Burden on the Non-Movant. ...............................21

    B.    Schlumberger Carried Its Evidentiary Burden To Prove a Prima Facie Case with Clear and Specific Evidence for Every Claim Asserted Against Rutherford. ...........................23

        1.    Breach of fiduciary duty ...........................24

        2.    Misappropriation of trade secrets .............27

        3.    Conversion. ...............................................30

        4.    Texas Theft Liability Act ...........................32

IV. The Trial Court Abused Its Discretion in Awarding $350,000 in Attorneys' Fees and $250,000 in Sanctions Against Schlumberger. .............34

    A.    Rutherford Failed To Segregate Her Fees as Required by Texas Law. ......................................34

    B.    The Trial Court's Award of Sanctions Cannot be Reconciled with the Record. .............36

Prayer ......................................................................38

Certificate of Service .................................................39

Certificate of Compliance ..........................................40

# INDEX OF AUTHORITIES

## Cases

*Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,*
209 S.W.3d 644 (Tex. 2006) .............................................................. 6

*Aviles v. Aguirre,*
292 S.W.3d 648 (Tex. 2009) (per curiam) ...................................... 12

*BBB of Metro. Houston, Inc. v. John Moore Servs., Inc.,*
441 S.W.3d 345 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ... 14

*Biopolymer Eng'r, Inc. v. ImmuDyne, Inc.,*
304 S.W.3d 429 (Tex. App.—San Antonio 2009,
op. vacated pursuant to settlement) ............................................... 35

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
489 U.S. 141 (1989) .......................................................................... 17

*Casso v. Brand,*
776 S.W.2d 551 (Tex. 1989) ............................................................. 29

*Charalambopoulos v. Grammer,*
3:14–CV–2424–D, 2015 WL 390664 (N.D. Tex. Jan. 29, 2015) ..... 10

*Cheniere Energy, Inc. v. Lotfi,*
449 S.W.3d 210
(Tex. App.—Houston [1st Dist.] 2014, no pet.) ...................... 9, 14, 19

*Cohen v. Cowles Media Co.,*
501 U.S. 663 (1991) .......................................................................... 17

*Dolcefino v. Randolph,*
No. 14-00-00602-CV, 2001 WL 931112
(Tex. App.—Houston [14th Dist.] 2001, pet. denied) ...................... 7

*Freeman v. Schack,*
154 Cal. App. 4th 719 (Cal. App. 4 Dist. 2007) ............................. 18

*Grainger v. W. Cas. Life Ins. Co.*,
930 S.W.2d 609
(Tex. App.—Houston [1st Dist.] 1996, writ denied)........................30

*Hyde Corp. v. Huffines*,
314 S.W.2d 763 (Tex. 1958)...........................................................17

*Jardin v. Marklund*,
431 S.W.3d 765
(Tex. App.—Houston [14th Dist.] 2014, no pet.)...................9, 14, 16

*Kinney v. BCG Attorney Search*,
No. 03–12–00579–CV, 2014 WL 1432012
(Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) .............7

*KTRK Television, Inc. v. Fowkes*,
981 S.W.2d 779 (Tex. App.—Houston [1st Dist.] 1998, writ
denied), *rev'd in part on other grounds*,
*Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000)..........7

*Marks v. St. Luke's Episcopal Hosp.*,
319 S.W.3d 658 (Tex. 2010)...........................................................13

*Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*,
416 S.W.3d 71
(Tex. App.—Houston [1st Dist.] 2013, pet. denied) .......................24

*Paulsen v. Yarrell*,
No. 01–14–00351–CV, 2014 WL 7174259
(Tex. App.—Houston [1st Dist.] Dec. 16, 2014, no pet.) ..................5

*R.J. Suarez Enters. v. PNYX, L.P.*,
380 S.W.3d 238 (Tex. App.—Dallas 2012, no pet.) .......................33

*Rivers v. Johnson Custodial Home, Inc.*,
No. A-14-CA-484-SS, 2014 WL 4199540 (W.D. Tex. Aug. 22, 2014)...10

*RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc.*,
957 S.W.2d 121
(Tex. App.—Houston [14th Dist.] 1997, pet. denied).....................30

*Schimmel v. McGregor,*
  438 S.W.3d 847
  (Tex. App.—Houston [1st Dist.] 2014, pet. filed) ...............22, 24, 26

*Smith v. Baldwin,*
  611 S.W.2d 611 (Tex. 1980)..........................................................12

*St. Martin Evangelical Lutheran Church v. S. Dakota,*
  451 U.S. 772 (1981) ...............................................................10, 11

*TGS–NOPEC Geophysical Co. v. Combs,*
  340 S.W.3d 432 (Tex. 2011)..........................................................13

*T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.,*
  965 S.W.2d 18
  (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd).......................28

*Tony Gullo Motors I, L.P. v. Chapa,*
  212 S.W.3d 299 (Tex. 2006)..........................................................35

*U.S. Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton,*
  171 Cal. App. 4th 1617 (Cal. App. 4 Dist. 2009) ...........................18

*West v. Schlumberger Tech. Corp.,*
  234 F.3d 1279 (9th Cir. 2000) ......................................................37

*Whisenhunt v. Lippincott,*
  416 S.W.3d 689
  (Tex. App.—Texarkana 2013, pet. filed) .............................9, 10, 14

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 27.002 ...........................................2, 8, 11

TEX. CIV. PRAC. & REM. CODE § 27.005(c) ...............................................22

TEX. CIV. PRAC. & REM. CODE § 27.008(b) ...............................................5

TEX. CIV. PRAC. & REM. CODE § 27.011...................................................11

TEX. CIV. PRAC. & REM. CODE § 27.011(b) ...........................................2, 13

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12)............................................5

TEX. GOV'T CODE § 311.023(3) ..............................................................6

TEX. R. CIV. P. 97(a) ...............................................................20, 21

**Other Authorities**

Senate Comm. on State Affairs, Engrossed Bill Analysis,
 Tex. H.B. 2935, 83d Leg., R.S. (2013) ......................................6

No. 01-14-00776-CV

# In the Court of Appeals
# for the First Judicial District
# Houston, Texas

SCHLUMBERGER LIMITED AND
SCHLUMBERGER TECHNOLOGY CORPORATION,

*Appellants/Cross-Appellees,*

v.

CHARLOTTE RUTHERFORD,

*Appellee/Cross-Appellant.*

On Appeal from the
127th District Court at Houston, Texas

## APPELLANTS' REPLY BRIEF

TO THE HONORABLE FIRST COURT OF APPEALS:

As its text and history make clear, the Texas Citizens' Participation Act (TCPA) was never intended to protect private communications for personal gain, like those involved here. And when it does apply, the TCPA imposes only a minimal evidentiary burden on the non-movant. Misconstruing both the scope of the TCPA and its evidentiary standards, the trial court dismissed nearly every claim asserted by Schlumberger against Rutherford. In so doing, the trial

court created troubling precedent. If the TCPA's purpose will no longer be consulted in determining its applicability, and rational inferences from circumstantial evidence no longer allowed, the statute's reach will be constrained only by the creativity of counsel. As this case demonstrates, bizarre results will follow.

## SUMMARY OF ARGUMENT

When it enacted the TCPA, the Legislature included a "Purpose" provision, making clear that the statute is intended to "encourage and safeguard the constitutional rights of persons to petition, speak freely, and otherwise participate in government to the maximum extent permitted by law . . ." TEX. CIV. PRAC. & REM. CODE § 27.002. It also commanded that courts must construe the statute "to effectuate its purpose and intent fully." *Id*. § 27.011(b). In this case, the trial court demonstrably failed to interpret and apply the TCPA consistent with its purpose and the Legislature's command.

Schlumberger's lawsuit against Rutherford has nothing to do with abridging her constitutional rights to "petition, speak freely, and otherwise participate in government to the maximum extent permitted by law." Nor does the TCPA protect Rutherford's conduct at issue in

2

this lawsuit: breach of fiduciary duties by use of Schlumberger's confidential information obtained while Rutherford was its top Intellectual Property lawyer; improper removal and use of physical and electronic property from Schlumberger's premises; allowing third parties to access Schlumberger's confidential information and documents in her possession; and improperly and without permission deleting a large number of company files, including files containing confidential data and information. *See* CR.1344, 1415, 1418–21.

Disregarding the mismatch between Schlumberger's claims and the purpose and scope of the TCPA, the trial court concluded that the TCPA was applicable in this case. Rutherford now urges the Court to ratify that decision. Heedless of the broader consequences, Rutherford invites this Court to likewise ignore the TCPA's purpose of protecting only public communications analogous to participation in government, advocating instead that the Court endorse a myopic reading of isolated portions of the statute, focused solely on its definitions of the "right to petition" and "right of association." Thus, Rutherford envisions a virtually unlimited reach for the TCPA's dismissal mechanism, leading to unworkable and absurd results. The Court should reject Rutherford's

invitation to expand the scope of the TCPA beyond the text of the statute and the intent of the Legislature.

But even if the TCPA applies, Schlumberger introduced more than sufficient clear and specific evidence to establish a prima facie case, precluding dismissal of its claims. The trial court reached a contrary conclusion only by determining that circumstantial evidence is inadmissible to defeat a TCPA motion, a construction of the statute that is unsupported by its text and that runs afoul of longstanding evidentiary standards in Texas.

For her part, Rutherford is unwilling to endorse explicitly the trial court's indefensible "no circumstantial evidence" rule, choosing instead to focus on mischaracterizing Schlumberger's evidence as mere speculation and innuendo. But the record speaks for itself, and includes ample direct and circumstantial evidence to defeat Rutherford's TCPA motion. For all of these reasons, the Court should reverse the trial court's decision dismissing Schlumberger's claims for breach of fiduciary duty, misappropriation of trade secrets, conversion, and violation of the Texas Theft Liability Act.

## I. THE COURT HAS JURISDICTION TO CONSIDER SCHLUMBERGER'S APPEAL.

Referencing dicta from *Paulsen v. Yarrell*, No. 01–14–00351–CV, 2014 WL 7174259 (Tex. App.—Houston [1st Dist.] Dec. 16, 2014, no pet.), Rutherford asserts that the Court lacks jurisdiction over Schlumberger's appeal. Specifically, Rutherford claims that an amendment to Texas Civil Practice and Remedies Code Section 51.014 impliedly negates Schlumberger's ability to appeal the grant—as opposed to a denial—of a TCPA motion to dismiss under Texas Civil Practice and Remedies Code Section 27.008(b).[1] Rutherford is wrong.

Section 27.008(b) provides for appeals from orders on TCPA motions to dismiss without regard for whether an order is a grant or denial. And legislative history confirms that (1) the intent of the TCPA was to allow appeals from both grants and denials of TCPA motions to dismiss, and (2) the amendment to Section 51.014 did not alter the

---

1. *See* TEX. CIV. PRAC. & REM. CODE § 27.008(b) ("An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005."); § 51.014(a)(12) ("A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that . . . denies a motion to dismiss filed under Section 27.003.").

TCPA in that regard.  *See* Senate Comm. on State Affairs, Engrossed Bill Analysis, Tex. H.B. 2935, 83d Leg., R.S. (2013)  (sponsor explains that the original legislation allows appeals from grants and denials of TCPA dismissal motions, and that the amendment was simply intended to correct a Second Court of Appeals case finding no jurisdiction over the denial of a TCPA motion).

The Court should not read an implied modification of Section 27.008(b) into Section 51.014(a)(12)—doing so would be contrary to the express intent of the author of both provisions.  *See* TEX. GOV'T CODE § 311.023(3) (courts may consider legislative history); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006) ("cautiously" looking to legislative history where statutory language nebulous).  Indeed, Rutherford fails to point to any analogous case law holding that an amendment to one statute impliedly modified another, contrary to the express legislative intent of that amendment.

In any event, the Court has jurisdiction because the trial court's order partially denied the TCPA motion, thereby providing jurisdiction over the entire order under Section 51.014(a)(12).  *See Kinney v. BCG Attorney Search*, No. 03–12–00579–CV, 2014 WL 1432012, at *1, 13

(Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) (finding jurisdiction over both appeal and cross-appeal of partial denial and partial grant of TCPA motion to dismiss). In a closely analogous context, Texas courts of appeals have held that when jurisdiction under Section 51.014(a)(6) is triggered, jurisdiction exists over the entire order, and not just over the claims triggering jurisdiction. *See Dolcefino v. Randolph*, No. 14-00-00602-CV, 2001 WL 931112, at *3 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("this court has jurisdiction over the entire order denying appellants' motions for summary judgment"); *but see KTRK Television, Inc. v. Fowkes*, 981 S.W.2d 779 (Tex. App.—Houston [1st Dist.] 1998, writ denied), *rev'd in part on other grounds*, *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000) (finding jurisdiction present only with regard to specific claims triggering jurisdiction).

In sum, the Court has appellate jurisdiction and should address the merits of Schlumberger's appeal.

## II. THE TCPA DOES NOT APPLY TO SCHLUMBERGER'S CLAIMS AGAINST RUTHERFORD.

Rutherford asserts that Schlumberger's claims implicate the TCPA's protection of her "right to petition" and "right of association."

7

CR.237. Rutherford bore the initial burden of demonstrating the TCPA's applicability by a preponderance of the evidence. Because Rutherford did not, and could not, meet that burden, the trial court erred in dismissing Schlumberger's claims.

### A. The TCPA Protects Public Communications with a Nexus to Participation in Government, Not Private Communications for Commercial Gain.

The TCPA's language, context, and legislative history confirm that it protects communications made publicly and with a nexus to participation in government, and not private communications for commercial gain.

Section 27.002 describes the purpose of the TCPA as follows: "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, *and otherwise participate in government* to the maximum extent permitted by law." TEX. CIV. PRAC. & REM. CODE § 27.002 (emphasis added).

As decisions from both this Court and the Fourteenth Court of Appeals have noted, because the stated purpose of the TCPA includes the phrase "otherwise participate in government," it is apparent that the Legislature intended to protect only communications that are

8

analogous to participating in government. *See Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 216 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (explaining that the terms "citizen" in the title of the TCPA and "participate in government" in its purpose provision "contemplate a larger public purpose"); *id*. at 217 (Jennings, J., concurring) ("By including the phrase 'otherwise participate in government' in Section 27.002, the legislature intended to protect only constitutionally protected freedoms that rise to such a level that they can be considered participation in government.") (internal punctuation omitted); *Jardin v. Marklund*, 431 S.W.3d 765, 770–73 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Other Texas courts have also recognized that the TCPA is not intended to protect private communications. In *Whisenhunt v. Lippincott*, for example, the Sixth Court of Appeals held that the TCPA did not apply to a motion to dismiss defamation claims based on internal emails that had never been published in a newspaper, social media, or other public forum. 416 S.W.3d 689, 697–700 (Tex. App.—Texarkana 2013, pet. filed). *See also Rivers v. Johnson Custodial Home, Inc.*, No. A-14-CA-484-SS, 2014 WL 4199540, at *1–2 (W.D. Tex. Aug.

9

22, 2014); *Charalambopoulos v. Grammer*, 3:14–CV–2424–D, 2015 WL 390664 (N.D. Tex. Jan. 29, 2015). The court explained, "Considering the language of the statute as a whole, the Legislature's statement of intent, and existing law, which was referenced by the Legislature, we conclude that the TCPA does not apply to speech that is only privately communicated. Only under such an interpretation can both purposes of the TCPA be served." *Whisenhunt*, 416 S.W.3d at 700.

### 1. The TCPA should be construed consistent with the express purpose set forth in its text.

Rejecting the considered analysis of the issue in the *Cheniere Energy*, *Jardin*, and *Whisenhunt* decisions, Rutherford argues that the language in the TCPA's purpose provision should be given no consideration in this case. Rather, in Rutherford's view, the Court should focus solely on the language in Section 27.001 of the statute defining the "right to petition" and "right of association." *See* Appellee's Br. 27–28.

For the proposition that the TCPA's "Purpose" provision should be ignored, Rutherford directs the Court to *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772 (1981). According to Rutherford, in *St. Martin* the U.S. Supreme Court "observ[es] that

10

general statements of legislative purpose 'cannot defeat the specific and clear wording of a statute.'" Appellee's Br. 28 (quoting *St. Martin*, 451 U.S. at [791] 786 n.19).

But Rutherford misquotes *St. Martin*, omitting key language from the opinion that negates her argument. The actual quote from *St. Martin* reads as follows: "general statements of overall purpose *contained in legislative reports* cannot defeat the specific and clear wording of a statute." *St. Martin*, 451 U.S. at 786 n.19 (emphasis added). Of course, Schlumberger, like this Court in *Cheniere Energy*, points first and foremost to the clear *statutory text* of the TCPA setting forth its purpose, not legislative reports as discussed in *St. Martin. See* TEX. CIV. PRAC. & REM. CODE § 27.002 ("Purpose"). Further, the text of the TCPA itself directs that it be interpreted in light of its purpose. *See id.* § 27.011 ("Construction"). Rutherford's suggestion that the TCPA's purpose be given little or no weight in interpreting its operative provisions runs afoul of the plain text of the statute.

Contrary to Rutherford's suggestion, Texas courts consistently interpret statutes pursuant to express purposes set forth in statutory text. *See, e.g.*, *Aviles v. Aguirre*, 292 S.W.3d 648, 649 (Tex. 2009) (per

11

curiam) (noting that no other construction of the statute at issue would comply with the explicit purpose of the statute); *Smith v. Baldwin*, 611 S.W.2d 611, 615 (Tex. 1980) (interpreting DTPA, which commands that it be construed to promote its purpose set forth in Section 17.44 of the Texas Business and Commerce Code, in light of the legislative intent expressed in that section). Rutherford offers no legitimate reason, nor could she, why the TCPA—unlike other Texas statutes with "purpose" provisions—should be interpreted without reference to that provision.

### 2. The *Cheniere Energy*, *Jardin*, and *Whisenhunt* decisions do not misconstrue the TCPA.

Leaving aside Rutherford's misreading of *St. Martin*, she goes on to suggest that the *Cheniere Energy*, *Jardin*, and *Whisenhunt* courts all misconstrued the TCPA. But it is Rutherford who misunderstands both the statute and these decisions, urging a construction of the TCPA that is contrary to both the statute's text as well as established canons of construction.

As to *Cheniere Energy* and *Jardin*, Rutherford maintains that these decisions incorrectly read the TCPA's "Purpose" provision to "override" the definitions of the "right to petition" and "right of association" provisions in the statute. *See* Appellee's Br. 27–30. Not so.

12

*Cheniere Energy* and *Jardin* do not stand for the proposition that the TCPA's purpose provision "overrides" any other provision of the statute. Rather, these decisions properly recognize that *all* the provisions in the TCPA are informed by, and should be construed in harmony with, the TCPA's overarching purpose articulated in Section 27.002. This approach to construing the TCPA is consistent with both the text of the statute as well as established canons of construction. *See* TEX. CIV. PRAC. & REM. CODE § 27.011(b) (expressly requiring Texas courts to construe all of the TCPA's provisions "to effectuate its purpose"); *see also TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011) (explaining that the words of a statute should not be examined in isolation, but rather must be informed by the context in which they are used); *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010) (explaining that courts cannot interpret a statute in a manner that renders any part of the statute meaningless or superfluous).[2]

2. Rutherford argues that *Cheniere Energy* conflicts with this Court's decision in *BBB of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Rutherford overreads *John Moore*. In that case, the Court made clear that it was deciding only that "the scope of [the TCPA] is not limited only to protect speech *directed toward* the government." *Id*. at 353 (emphasis added). The *Cheniere Energy* decision also does not conclude that the

13

Rutherford also argues that *Whisenhunt*, and in turn *Cheniere Energy* and *Jardin*, incorrectly conclude that the TCPA does not protect private communications. *See* Appellee's Br. 31–32. Again, however, Rutherford's argument turns on her request that the Court ignore the TCPA's language, which makes clear that the statute protects public communications analogous to or involving participation in government, not private communications for commercial gain. *Whisenhunt*, 416 S.W.3d at 697; *Jardin*, 431 S.W.3d at 770–71; *Cheniere Energy*, 449 S.W.3d at 216.

In sum, the basis for Rutherford's disagreement with *Whisenhunt*, *Cheniere Energy*, and *Jardin* is that each of those decisions recognized an essential aspect of the TCPA that Rutherford urges this Court to ignore: the TCPA was designed to promote public discourse, citizen participation, and the exchange of ideas for the betterment of all. A reading of the TCPA that disregards this purpose would be contrary to the text and intent of the statute, and would dangerously expand its reach well beyond the expectations of the Legislature.

TCPA is so limited. Rather, *Cheniere Energy* understands the TCPA to protect public communications involving citizen participation—whether directed to the government or simply to the public—not private communications for personal gain. Thus the holdings in *John Moore* and *Cheniere Energy* do not conflict, as Rutherford suggests.

**B.** **The TCPA Is Inapplicable Because Schlumberger's Suit Is Not Premised on TCPA-Protected Communications.**

Rutherford could not, and did not, meet her burden to prove by a preponderance of the evidence that Schlumberger's lawsuit was filed in response to, premised upon, or otherwise implicated TCPA-protected communications.

Rutherford argues that her conduct triggering Schlumberger's lawsuit is protected by the TCPA because it is somehow "connected" to the filing of patent litigation against Schlumberger by Dynamic 3D Geosolutions, a subsidiary of her employer Acacia. *See* Rutherford's Cross-Appellant's Br. 29–30. The Court should reject this argument for several reasons.

First, none of Schlumberger's claims are "based on," "related to," or a "response" to Dynamic's patent litigation. Rather, Schlumberger brought claims against Rutherford addressing rights and remedies independent of and different from those at issue in patent litigation. Likewise, none of Schlumberger's claims implicates First Amendment concerns, much less the specific First Amendment concerns protected by

15

the TCPA. Finally, accepting Rutherford's expansive interpretation of the TCPA leads to unreasonable and absurd results.

### 1. Schlumberger's suit does not implicate the First Amendment concerns addressed by the TCPA.

According to Rutherford, if any connection can be drawn between Dynamic's patent litigation and Schlumberger's suit against her, the protections of the TCPA are invoked. Rutherford is mistaken.

To begin with, Rutherford's argument is premised on the notion that *Dynamic*'s pursuit of patent litigation somehow constitutes an exercise of *Rutherford*'s constitutional rights. This is not the case. *See Jardin*, 431 S.W.3d at 774. Rutherford cannot invoke any "right to petition" that Dynamic may possess. *See id.*

And although Dynamic's allegations alerted Schlumberger that Rutherford may have violated her contractual and legal duties, causing Schlumberger to investigate her departure, the fact that information discovered during that investigation resulted in the filing of this lawsuit does not equate to this lawsuit being connected to Dynamic's patent case. Rather, Schlumberger's suit against Rutherford involves multiple causes of action, including breach of contract, breach of fiduciary duty, and misappropriation of trade secrets claims, all of which address rights

16

and remedies independent of and different from those at issue in patent litigation. As both the U.S. Supreme Court and Texas courts have recognized, the law protecting trade secrets advances "goals outside the contemplation of the federal patent scheme" in a manner "not aimed exclusively at the promotion of [the] invention itself." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166 (1989); *see also Hyde Corp. v. Huffines*, 314 S.W.2d 763, 773 (Tex. 1958).

Further, as in this case, trade secret misappropriation cases often involve breaches of contracts or breaches of confidence. Such cases do not implicate First Amendment concerns, much less the specific First Amendment concerns protected by the TCPA. *See, e.g., Cohen v. Cowles Media Co.*, 501 U.S. 663, 668–72 (1991) (holding that First Amendment protections were not triggered by a private cause of action for promissory estoppel); *see also* Schlumberger's Cross-Appellees' Br. 31–37.

Under Rutherford's expansive view of the TCPA, contrary to these precedents, an employee and even a fiduciary such as herself, can invoke the TCPA as a shield to "immunize" tortious, unlawful, and unethical conduct so long as that misconduct has some connection to a

17

subsequently filed patent lawsuit. Surely the Legislature did not intend the TCPA to apply in this manner.[3]

### 2. Applying the TCPA to a broad array of claims unrelated to the statute's purpose leads to unreasonable and absurd results.

Rutherford's argument that the TCPA's protections are invoked by the mere existence of any connection between Dynamic's patent lawsuit and Schlumberger's claims against her is perhaps most troubling because it is predicated on an interpretation of the TCPA that is unworkable, unreasonable, and leads to absurd results. It turns on an expansive and aggressive reading of the TCPA, particularly regarding

---

3. California courts have rejected the overly broad interpretation of that State's anti-SLAPP statute that Rutherford advocates here. California courts look to the "gravamen of a cause of action [to determine] whether the anti-SLAPP statute applies." *U.S. Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton*, 171 Cal. App. 4th 1617, 1625 (Cal. App. 4 Dist. 2009). With particular reference to suits asserting attorney misconduct, California courts have recognized a "growing body of case law [holding] that actions based on an attorney's breach of professional and ethical duties owed to a client are not SLAPP suits, even though protected litigation activity features prominently in the factual background." Appellants' Br. 40.

Rutherford calls this precedent "irrelevant" because the California statute applies to a cause of action "arising from" protected activity, whereas the Texas statute applies to a cause of action that is "based on, relates to, or is in response to" protected activity. Appellee's Br. 40-41. But California courts are not focused on the distinction between the asserted technical definitions of the phrases "arises from" and "relates to." Rather, like Texas courts, California courts look to the purpose of the anti-SLAPP statute and determine whether the act underlying the plaintiff's cause of action was "an act in furtherance of the defendant's right of petition or free speech." *Freeman v. Schack*, 154 Cal. App. 4th 719, 727 (Cal. App. 4 Dist. 2007).

the breadth of its provisions protecting the "right to petition" and the "right of association," that insists these provisions be read broadly, and in isolation, rather than in light of the TCPA's "Purpose" set forth in Section 27.002.

As this Court has recognized however, untethering the TCPA's "right to petition" and "right of association" provisions from its "larger public purpose" and the "generally recognized parameters of First Amendment protections" leads to an unreasonable and absurd expansion of the statute's applicability. *Cheniere Energy*, 449 S.W.3d at 216–17 (noting that if the statute is not read in light of these considerations, "any communication that is part of the decision-making process in an employment dispute—to name just one example—could be used to draw within the TCPA's summary dismissal procedures private suits implicating only private issues").

The consequences of applying Rutherford's rule demonstrate the concerns articulated in *Cheniere Energy*. For example, under Rutherford's interpretation, the TCPA would apply to any and all compulsory counterclaims because they are necessarily "associated" or "connected" with the triggering claim or suit. *See* TEX. R. CIV. P. 97(a)

(providing that a pleading "shall state as a counterclaim any claim . . . if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"). The upshot would be that every compulsory counterclaim would invoke the TCPA's procedures, including a potential award of attorneys' fees, sanctions against the (compulsory) counterclaimant, and—according to the trial court—dismissal of the compulsory counterclaims unless the counterclaimant can prove its case by non-circumstantial evidence at the outset of a lawsuit and long before the completion of discovery.[4]

In addition, under Rutherford's interpretation, the TCPA could be used to abrogate or substantially undermine longstanding Texas statutory and common law remedies for tortious and unlawful conduct. Applied as broadly as Rutherford suggests, the TCPA could shield

---

4. Rutherford argues that it is "implausible" to suggest that all compulsory counterclaims would implicate the TCPA's protections because "[a] counterclaim can be, but is not necessarily, filed in response to—that is, in retaliation for—the plaintiff's filing of the original claim, which is an act of petitioning." Appellee's Br. 34.

Rutherford appears to have forgotten what she asserts elsewhere in the same brief: under Section 27.003(a) the TCPA is also triggered by a legal action that "relates to" the "right to petition," not just legal actions that are filed "in response to" the exercise of the right to petition. Of course, by their nature compulsory counterclaims are necessarily "related to" the triggering claim or suit. *See* Tex. R. Civ. P. 97(a).

conduct contravening Texas's Free Enterprise and Antitrust Act of 1983, the Texas Insurance Code, and Texas's anti-discrimination and anti-retaliation laws. *See* Schlumberger's Cross-Appellees' Br. 40–48. The notion that the Legislature intended the TCPA's reach to be so broad and all-encompassing, shielding all manner of illegal and tortious conduct unrelated to the purposes of the TCPA, strains credulity.[5]

## III. EVEN ASSUMING THE TCPA APPLIES, SCHLUMBERGER MET ITS EVIDENTIARY BURDEN TO PREVENT DISMISSAL OF ITS CLAIMS.

Even if the Court concludes that Schlumberger's lawsuit implicates the TCPA, it should reverse the trial court's dismissal of Schlumberger's claims for breach of fiduciary duty, misappropriation of trade secrets, conversion, and violation of the Texas Theft Liability Act. The TCPA imposes a minimal evidentiary burden on plaintiffs seeking to avoid dismissal, and Schlumberger more than adequately met that burden.

### A. The TCPA Imposes a Minimal Evidentiary Burden on the Non-Movant.

If the trial court determines that a movant in a TCPA dismissal motion has met her initial burden to demonstrate that the non-movant's

---

5. Even if the TCPA applies in this case, the commercial speech exception in Section 27.010(b) of the TCPA prevents dismissal of Schlumberger's claims against Rutherford. *See* Appellants' Br. 46–48.

lawsuit implicates the TCPA, the burden shifts to the non-movant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c). In determining whether a non-movant carries that burden, the trial court "shall consider" both the pleadings and evidence, *id.* § 27.006, and it must review them in the light most favorable to the non-movant. *Schimmel v. McGregor*, 438 S.W.3d 847, 855–56 (Tex. App.—Houston [1st Dist.] 2014, pet. filed).

Here, the trial court made clear that it interpreted Section 27.005(c)'s requirement that the non-movant submit "clear and specific" evidence establishing a prima facie case to foreclose the court's consideration of any circumstantial evidence. RR.IX.45. But interpreting the TCPA to preclude rational inferences from circumstantial evidence would violate the definition of a prima facie case under Texas law, the ordinary meaning of "clear and specific," and the elementary principle of Texas law that any fact may be proved through circumstantial evidence. Appellants' Br. 50–54. Moreover, precluding rational inferences from circumstantial evidence would by definition lead to absurd results, and would require the Court to

22

conclude that the Legislature intended to impose on litigants a higher burden to survive a motion to dismiss filed at the outset of a case than would be necessary ultimately to prevail at trial. *See id.*[6]

The Court should confirm that (1) the prima facie standard defines the quantum of evidence needed to overcome a TCPA motion, and (2) the terms "clear and specific" relate to the quality of evidence and do not exclude circumstantial evidence and rational inferences.

**B.   Schlumberger Carried Its Evidentiary Burden To Prove a Prima Facie Case with Clear and Specific Evidence for Every Claim Asserted Against Rutherford.**

Rutherford does not deny that in evaluating a TCPA motion, the Court must review the pleadings and evidence in the light most favorable to the non-movant. *Schimmel*, 438 S.W.3d at 855–56; *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80–81 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

---

6. In addition, precluding the use of circumstantial evidence would violate the Open Courts provision of the Texas Constitution. *See* Appellants' Br. 55–58. Tellingly, Rutherford's lead argument in response to Schlumberger's Open Courts argument is a wholesale retreat from any claim of a heightened evidentiary standard, as Rutherford instead argues that she is applying only generally applicable Texas law precluding "meager" circumstantial evidence and "stacked" inferences. Appellee's Br. 50. This is irreconcilable with both her argument on appeal, *e.g.* Rutherford's Cross-Appellant's Br. 20, and her trial court argument, *e.g.*, RR.VII.42, which convinced the trial court that the TCPA prohibits the use of circumstantial evidence by a plaintiff, *e.g.*, RR.VII.41-42, RR.IX.45, 47–48.

Nevertheless, she makes strained attacks on Schlumberger's evidence that serve only to underscore the invalidity of the evidentiary standard she advocates. By presenting direct and circumstantial evidence to support each of its claims, Schlumberger met its burden under Section 27.005(c). *See* Appellants' Br. 59–71.

### 1. Breach of fiduciary duty

In support of its breach of fiduciary duty claim, Schlumberger presented evidence showing that a number of USB drives were attached to Rutherford's computer between the time she accepted her new position with Acacia and her last day at Schlumberger—a timeframe in which, as Schlumberger's Deputy General Counsel for Intellectual Property, Rutherford indisputably owed Schlumberger the highest of fiduciary duties. CR.1334. Those drives contained confidential Schlumberger information, including trade secrets. CR.1334, 1415, 18–21. Rutherford accessed these drives after accepting employment with Acacia, CR.1334, connected some of them to her Acacia laptop, CR.2859, and ultimately failed to return those drives to Schlumberger upon her departure from the company, CR.1406–07, 1414, 1431. Rutherford also failed to return a My Book external hard drive, which contained

24

confidential Schlumberger emails. CR.73, 1406–07, 1414, 1431. Finally, Rutherford deleted files from her company-issued laptop before returning it. CR.1334.[7]

In response, Rutherford asserts that Schlumberger's evidence established only that it could not find the drives, not that Rutherford had taken them. Appellee's Br. 53 & n.6. But Rutherford fails to explain witness testimony directly contradicting her account of what she did with the missing devices. *See* CR.1431 (Supplemental Declaration of Janet Lennon). Although Rutherford would have the factfinder believe her testimony and not Schlumberger's witnesses, the governing standard requires just the opposite. *See Schimmel*, 438 S.W.3d at 855–56.

Rutherford also argues that the affidavit of David Cowen, demonstrating that she accessed confidential information, is invalid.

---

7. Moreover, as Schlumberger discovered after bringing its lawsuit, Rutherford breached her fiduciary duties by concurring in the filing of a lawsuit against Schlumberger involving subject matter she worked on as a Schlumberger attorney. CR.1422, CR.2849–52, RR.VIII.PX.13 p.46. Rutherford does not deny that this constituted a breach of her fiduciary duties, which was also established through the affidavits of two experts on Texas' disciplinary rules and ethical requirements. *See* CR.2998–3045 (Affidavits of Charles Herring and James McCormack). Rutherford's consciousness of her misconduct is evidenced by the fact that her narrative changed as the case progressed. While she initially insisted that she had no communications whatsoever with Acacia pertaining to Schlumberger, she later admitted to having such communications. *Compare*, CR.1187–96, CR.1210, *with* RR.VIII.PX13 p.36.

25

She maintains that testimony based on an "understanding" is not evidence, and Cowen stated that he has an "understanding" of what devices were used by Rutherford. Appellee's Br. 55. But Cowen explains that he identified the various files accessed while the user "crutherford2" was logged in. *E.g.*, CR.1334. Rutherford's assertion that this is insufficient to show that she was using the devices at issue demonstrates that her interpretation of the "clear and specific" standard excludes rational inferences, and is therefore unworkable.[8]

Rutherford also argues that the deleted files could have been sent to the recycling bin or could have been backed up. Appellee's Br. 56. However, the mere fact that information was potentially recoverable does not negate a prima facie case, particularly where evidence is viewed in the light most favorable to the plaintiff defending against a TCPA motion to dismiss. Again, Rutherford's argument improperly inverts the applicable standard.

---

8. Similarly, Rutherford attacks the Robin Nava affidavit as not being based on personal knowledge, claiming that "it is not proper for a lay witness with no computer or forensic background to rely on a purported expert to reach her conclusions." Appellee's Br. 56. However, the substantive portion of Nava's affidavit is her testimony that various files contained IP content based on her personal familiarity with Rutherford's naming conventions, and her personal knowledge of the value of Schlumberger's IP content. CR.1413–22.

Finally, Rutherford asserts that Schlumberger did not address the damages element of the breach of fiduciary duty claim. Appellee's Br. 57. This argument fails. First, damages are not necessary for a breach of fiduciary duty claim. *See* Appellants' Br. 59–63. Second, the evidence establishes that Rutherford removed confidential trade secret information. *See id.* at 62. To the extent Rutherford implies this information is somehow valueless, Nava's testimony includes evidence of the value of the trade secrets that Rutherford improperly removed in breach of her fiduciary duties. CR.1413–22. In any event, it is undisputed that Schlumberger sought injunctive relief requesting the return of its information.

## 2. Misappropriation of trade secrets

As Schlumberger previously demonstrated regarding its breach of fiduciary duty and misappropriation of trade secrets claims, Rutherford was in possession of a substantial amount of secret information, both on the devices she failed to return upon her departure and also as a result of her position with Schlumberger as Deputy General Counsel for Intellectual Property. CR.1205, 1414, 18–21, 1614–15. She developed, managed, and assessed Schlumberger's IP strategies. *Id.* The very fact

27

that Rutherford had and took secret information after accepting employment with Acacia, where she is indisputably in a position to use it to compete against Schlumberger, demonstrates the prima facie case. *See T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd).

In response, Rutherford asserts that Schlumberger failed to identify any purportedly stolen information. Appellee's Br. 17. Rutherford is incorrect. The Cowen affidavit specifically identified Schlumberger files accessed by Rutherford, including numerous files whose names plainly signify IP content. CR.1334 *et seq.* In addition, Nava explained that the files referenced by Cowen contained Schlumberger's confidential trade secret information, CR.1415, and she identified specific files as containing trade secret information pertaining to Petrel, CR.1415, 18–21. Further, Rutherford herself has admitted that some of the drives contained confidential information. CR.1205.

Rutherford goes on to make various complaints about the Nava affidavit, none of which have merit. First, Rutherford argues that Nava's affidavit does not state the basis for Nava's claim that the affidavit is based on her personal knowledge. Appellee's Br. 59. But

Nava's declaration explains that she is familiar with Schlumberger's IP information and strategy based on her position as Schlumberger's Deputy General Counsel for Intellectual Property. CR.1413–15. As such, Rutherford's complaint is meritless.

Second, Rutherford asserts that Nava's testimony is that of an interested witness that cannot easily be controverted. Appellee's Br. 59. But that evidentiary principle arises in the summary-judgment context, and has no application here. *See, e.g.*, *Casso v. Brand*, 776 S.W.2d 551, 557 (Tex. 1989) (holding, *inter alia*, that if an affidavit of an interested witness cannot be easily controverted, it will not support a summary judgment).[9] Further, the case cited by Rutherford for this argument, *Grainger v. Western Casualty Life Insurance Co.*, 930 S.W.2d 609 (Tex. App.—Houston [1st Dist.] 1996, writ denied), concerns testimony regarding an individual's subjective knowledge or intentions, which are not susceptible of being easily controverted. *See Grainger*, 930 S.W.2d at 615. Here, Nava testified to factual information about Schlumberger's intellectual property and business strategies, in

___

9. More generally, the rationale of the body of law regarding an interested witness's testimony that cannot easily be controverted is that the jury should decide the issue, and it therefore should not be finally determined at an early stage of litigation. *E.g., RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc.*, 957 S.W.2d 121, 132 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).

contrast to the *Grainger* plaintiffs' testimony as to their own expectations and intentions. Thus, *Grainger* is inapposite.

Finally, Rutherford argues that Schlumberger has no damages and "fails to explain how [Rutherford] used the information or why Schlumberger thinks she used the information." Appellee's Br. 60. Again, this argument ignores the record. Schlumberger's prima facie case is established by, among other things, the fact that Rutherford possessed and removed confidential information belonging to Schlumberger after she accepted employment with Acacia, where she is indisputably in a position to use that information to compete against Schlumberger, and that Rutherford's actions have impaired the value of Schlumberger's trade secrets. Appellants' Br. 65–66.

### 3. Conversion.

In support of its conversion claim, Schlumberger provided direct evidence that it owned computer devices that Rutherford had control over and failed to return to Schlumberger when she left the company, despite being asked to do so at her exit interview. CR.73, 77, 1406–07, 1414, 1431. Schlumberger is entitled to have that property returned or to be reimbursed for its value.

In response, Rutherford offers no legitimate complaints about Schlumberger's evidence. She begins by asserting that the testimony of Janet Lennon, Rutherford's assistant at Schlumberger, somehow does not establish that Schlumberger owned the devices at issue. Appellee's Br. 61–62. But Lennon testified that she provided the devices (USB flash drives) to Rutherford at Rutherford's request. CR.76. Contrary to Rutherford's suggestion, the rational inference from Lennon's testimony is that Lennon met Rutherford's request by obtaining the devices from Schlumberger.[10]

Similarly, Rutherford claims that the affidavit of Gary DeLeon fails to demonstrate that Schlumberger owned the external hard drive because he inaccurately stated the date that he assisted in backing up Rutherford's files. Appellee's Br. 61. This is another instance, however, of Rutherford arguing that a minor discrepancy in a witness's testimony requires draconian results. After all, Rutherford does not dispute that

10. Rutherford also attacks Lennon for stating in an affidavit that she provided "about ten USB flash drives," while later testifying that she could not "put a number to" the flash drives she provided. Appellee's Br. 62. However, there is no meaningful discrepancy in this testimony. In both instances, Lennon was unable to recall the exact number of devices provided to Rutherford, but in one instance she estimated the number was "about ten." Rutherford's suggestion that Lennon's testimony is invalid or not credible based on these answers is transparently without merit.

Schlumberger provided her the external hard drive. Rutherford's assertion that an IT Department Manager's failure to correctly recall a date hardly supports her suggestion that his testimony should therefore be ignored in its entirety.

Finally, Rutherford claims that Schlumberger "does not even make an argument regarding conversion damages in its brief." Appellee's Br. 62. But Schlumberger explained that it "is entitled to have [its] property returned or be reimbursed for its value." Appellant's Br. 68.[11] In sum, Rutherford fails to raise any meaningful challenge to the prima facie evidence supporting Schlumberger's conversion claim.

### 4. Texas Theft Liability Act

Finally, the evidence Schlumberger submitted below readily establishes a prima facie case of each of the elements of its Texas Theft Liability Act claim. *See* Appellants' Br. 70.

In response, Rutherford asserted that Schlumberger presented no evidence and made no argument with regard to intent and damages.

---

11. Rutherford cites *R.J. Suarez Enters. v. PNYX, L.P.*, 380 S.W.3d 238, 242 (Tex. App.—Dallas 2012, no pet.), for the proposition that Schlumberger must provide evidence of the value of converted property. But that case involved the unremarkable requirement that, by the end of a trial, a party must provide evidence of the specific amount of damages it incurred. *Id*. As such, it is inapposite to a party's prima facie burden.

Appellee's Br. 64. Rutherford is mistaken. Schlumberger argued in the trial court and this Court that computer devices provided by the company to Rutherford, containing confidential business information, were intentionally taken by Rutherford and not returned. *See* Appellants' Br. 70–71. In support of this argument, Schlumberger cited record testimony directly contradicting Rutherford's account of what she did with the devices at issue. *See id.* (citing, *inter alia*, CR.1431 in comparison to CR.1206–08).

As such, Schlumberger introduced evidence clearly and specifically showing that Rutherford has been untruthful with regard to her taking of the drives and information, demonstrating that she intentionally and wrongfully removed Schlumberger's devices and information. Schlumberger further explained that Rutherford's actions "have damaged Schlumberger" and cited Nava's testimony describing the value of the intellectual property taken. Appellants' Br. 70 (citing CR.2892–93). Rutherford's contrary claims are belied by the record.

## IV. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING $350,000 IN ATTORNEYS' FEES AND $250,000 IN SANCTIONS AGAINST SCHLUMBERGER.

Finally, the trial court's attorneys' fees and sanctions awards cannot withstand scrutiny. Specifically, Rutherford's submission for attorneys' fees was insufficient and internally inconsistent with regard to segregation of fees between the dismissed causes and the breach of contract claim.

Moreover, to the extent Rutherford is correct that her attorneys' fees cannot be segregated because the breach of contract claim is intertwined with the other causes of action, bringing those other causes cannot constitute sanctionable wrongdoing. In any event, the trial court's imposition of sanctions is independently unreasonable because Rutherford's claims that Schlumberger has engaged in a history of revenge litigation, and engaged in improper conduct here, are demonstrably false.

### A. Rutherford Failed To Segregate Her Fees as Required by Texas Law.

As an initial matter, Rutherford erroneously asserts that the fee segregation requirements of *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–14 (Tex. 2006), do not apply to TCPA fee awards

34

because the TCPA's fee provision authorizes fees "as justice and equity require." Appellee's Br. 65–66. But the authority Rutherford cites for that supposed proposition, *Biopolymer Engineer, Inc. v. ImmuDyne, Inc.*, 304 S.W.3d 429, 446 (Tex. App.—San Antonio 2009, op. vacated pursuant to settlement), says nothing of the sort.

Rather, the *Biopolymer* court applied *Tony Gullo*'s segregation holding and determined that the plaintiff's declaratory judgment claims against three defendants were "intertwined to the point of being inseparable." *Biopolymer*, 304 S.W.3d at 446. Thus, Rutherford has cited to no case law actually supporting her argument that the "justice and equity" language in the TCPA's attorneys' fees provision means the fee segregation requirements of *Tony Gullo* do not apply.

Rutherford also claims that her affidavits established that more than $580,000 of her $611,000 in fees could not be segregated. Appellee's Br. 66. But Rutherford tellingly makes no attempt to respond to Schlumberger's Appellants' Brief, which explained that Rutherford's submitted billing records demonstrated that she made a minimal, insufficient, and internally inconsistent effort to comply with

*Tony Gullo*. *See* Appellants' Br. 76 & n.24. As such, the attorneys' fee award should be reversed.

## B. The Trial Court's Award of Sanctions Cannot be Reconciled with the Record.

The trial court's award of sanctions is unsupported by the record. To the extent that Rutherford is correct that Schlumberger's dismissed claims were inextricably intertwined with its breach of contract claim, the trial court's imposition of sanctions for bringing those claims was necessarily arbitrary and an abuse of discretion. And regardless, the trial court's award of sanctions was unreasonable and should be overturned because Rutherford's allegations of a history of revenge litigation by Schlumberger, and improper conduct here, are unsupported by history or the record.

For example, Rutherford claims that "Schlumberger has filed more than one revenge suit against former employees," citing two prior instances of litigation. In *Schlumberger Tech. Corp. v. Krall*, No. 2011–23838 in the 127th District Court of Harris County, a no-evidence summary judgment was granted against Schlumberger in a case involving a former employee defendant. *See* CR.2282. But Rutherford fails to disclose to the Court that Schlumberger in fact prevailed against

the employee's new employer, and was awarded $1.2 million in damages for tortious interference.

The second case relied on by Rutherford is even less compelling— it is a 15-year-old case, brought *against* Schlumberger, and thus self-evidently fails to demonstrate a pattern of revenge suits. *See West v. Schlumberger Tech. Corp.*, 234 F.3d 1279, at *2 (9th Cir. 2000) (unpublished opinion). Rutherford unsurprisingly fails to cite any authority imposing sanctions based on wholly dissimilar litigation separated by fifteen years.

Rutherford's allegations that Schlumberger should be sanctioned for introducing "sham affidavits" are equally unpersuasive. For example, Rutherford claims that Lennon's affidavit stated that Rutherford organized many hard copy documents in her office prior to leaving, but that Lennon later testified that Rutherford "used very few paper files." Appellee's Br. 70 (citing CR.264–65, 268). However, Lennon never testified that "Rutherford used very few paper files." Her actual testimony was that Rutherford didn't like to have a lot of paper, regularly shredded documents, and that the amount of physical paper on Rutherford's desk was typically less than a foot high—but it "just

37

depended." CR.264. As such, Rutherford's attack on Lennon's testimony cannot be reconciled with the record.

In sum, the trial court's awards of fees and sanctions are unsupported by history or the record, and should be reversed as arbitrary and unreasonable.

## PRAYER

The Court should reverse the trial court's order dismissing Schlumberger's claims for breach of fiduciary duty, misappropriation of trade secrets, conversion, and violations of the Texas Theft Liability Act, hold that Rutherford's dismissal motion is denied in its entirety, and remand the case for further proceedings.

Alternatively, the Court should reverse the imposition of sanctions and award of attorneys' fees and render judgment that neither sanctions nor attorneys' fees should be awarded against Schlumberger. In the further alternative, the Court should remand with instructions that the trial court require proper segregation of Rutherford's fee request to exclude recovery for any work related to Schlumberger's breach of contract claim.

Respectfully submitted,

_/s/  Sean D. Jordan_

|                                        |                                           |
|----------------------------------------|-------------------------------------------|
| Craig Smyser                           | Sean D. Jordan                            |
| Land Murphy                            |   State Bar No. 00790988                  |
| Justin Waggoner                        | Kent C. Sullivan                          |
| SMYSER KAPLAN & VESELKA, L.L.P.        | Danica L. Milios                          |
| 700 Louisiana Street, Suite 2300       | Peter C. Hansen                           |
| Houston, Texas 77002-2700              | SUTHERLAND ASBILL & BRENNAN LLP           |
| [Tel.] (713) 221-2300                  | 600 Congress Ave., Suite 2000             |
| [Fax] (713) 221-2320                   | Austin, Texas 78701                       |
|                                        | [Tel.] (512) 721-2679                     |
|                                        | [Fax] (512) 721-2656                      |
|                                        | *sean.jordan@sutherland.com*              |

COUNSEL FOR APPELLANTS

## CERTIFICATE OF SERVICE

On March 13, 2015, the foregoing document was served via Odyssey File & Serve, U.S. Certified Mail, return receipt requested, electronic mail, or third-party carrier on the following:

Thomas C. Wright
Shelley J. White
WRIGHT & CLOSE L.L.P.
One Riverway, Suite 2200
Houston, Texas 77056
*wright@wrightclose.com*
*white@wrightclose.com*

COUNSEL FOR APPELLEE

_/s/  Sean D. Jordan_
Sean D. Jordan

39

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief contains 7,494 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/ Sean D. Jordan
Sean D. Jordan